## NORRIS *vs.* THE STATE.

1. Where insanity is set up as a defence to a criminal prosecution, it is competent for a witness, whose intimacy with the prisoner and opportunies for observation have been such as to enable him to form a correct judgment of his mental condition, not only to depose to facts, but to give his opinion as to whether he was sane or not at the time of the commission of the offence.

Error to the Circuit Court of Montgomery. Tried before the Hon. Sam'l Chapman.

ELMORE, for plaintiff in error.

ATTORNEY GENERAL, for the State:

1. On questions of science, trade, &c., persons of skill, as a general rule, alone may give their opinions in evidence. 1 Greenl. Ev. § 440.

2. An exception to this general rule is, that in cases of insanity, any persons occupying a peculiar relation or connection to the person whose soundness of mind is questioned may "detail facts, circumstances and a series of declarations, conducing to show an aberration of mind," and give their opinion on the same. Bowling v. Bowling, ex'r, 8 Ala. Rep. 538; Robert v. Trawick, 13 Ala. Rep. 84; Watson v. Anderson, ib. 204; Gibson v. Gibson, 9 Yerg. 332.

3. This exception is applicable only to will cases, and does not apply to all civil cases; and is permissible in cases of wills more on authority than sound reason. McCurry v. Hooper, 12 Ala. Rep. 823.

4. Even if the exception were good in *all* civil suits, there would be no reason why the same rule should prevail in criminal cases, which, in order to absolve the party from guilt, require a *higher degree of insanity* to be shown than would be sufficient to discharge one from the obligations of his contract. 2 Greenl. Ev. § 372.

5. The exception to the general rule referred to should never prevail in criminal cases, where, when guilt is once proven and the prisoner relies on insanity as a defence, he must make it out to the satisfaction of a jury, beyond all reasonable doubt.

And aside from the different conclusions that witnesses, not experts, &c., would arrive at from the same facts, tending only to mislead and embarrass the jury, a *strong and irresistible* desire to shield a near relative from an ignominous death would be too great a temptation, in many instances, to commit perjury.—State v. Brinyea, 5 Ala. Rep. 243.

6. One reason why the exception prevails in will cases may be found in the fact, that those upon whom the tempta-tion to commit perjury might act have their mouths sealed by being interested witnesses on one side or the other.

7. There is no error affirmatively shown in the bill of exceptions.

8. To permit any and every witness who can detail acts, &c. to give an opinion upon those acts, that the party is sane or insane, would be to confer upon such witnesses the functions of the jury.

CHILTON, J.—This was an indictment for grand larceny. Plea not guilty. The defendant below was convicted and sentenced by the presiding judge to three years imprisonment in the penitentiary.

A bill of exceptions was sealed at the trial, from which it appears that the father of the prisoner was introduced as a witness, who testified that his son was about seventeen years of age at the time of the commission of the alleged act: That he had lived with him from his infancy (birth,) and he testified to many facts, consisting of the acts and declarations of the prisoner, tending to show, that for a series of years he had been insane, and was of unsound and diseased mind at the time of the commission of the supposed larceny. Upon the part of the defence, it was then proposed to prove by the witness, that it was his opinion, founded on the acts and declarations thus deposed to, that the prisoner was of unsound mind at the time of the alleged offence, but the court refused to permit the witness to give his opinion as evidence to the jury. The witness then stated that he knew of numerous little acts and circumstances, which he had not the power to detail or explain, but which would go to show the condition of the defendant's mind for a series of years, up to the time he committed the alleged act, and which aided witness in the formation

54

of his opinion as to the mental condition of the prisoner. The proposition to admit his opinion was thereupon renewed, but rejected by the court. One Haman was also introduced in behalf of the prisoner, who swore that he had been teaching school since 1841; that the defendant was his pupil in 1847, and so continued up to within a short period of the alleged act: That the conduct of the prisoner had attracted his peculiar attention ever since he had become his pupil: That he had been in the habit of closely observing the peculiar mental characteristics of his pupils, and of noticing their ability to comprehend and to learn; that he had particularly observed the mental condition of the prisoner, and felt capable from this, as well as from his general observation of the minds of all his scholars, of giving a correct opinion as to the character and condition of the defendant's mind up to the time he left his school. The defence then proposed to prove by this witness, that in his opinion, the prisoner was insane and incapable of distinguishing between right and wrong. This proof was also rejected by the presiding judge, and the several decisions of the primary court, rejecting the opinions of said witnesses, are now insisted on in this court as erroneous.

Although as a general rule, the opinions of witnesses are not to be received as evidence, yet there are exceptions to the rule, arising either out of the nature of the fact to be proved, or dependent upon the character of the witness by whom the proof is to be made. Of the first class, we may instance the familiar practice of receiving as evidence a witness's belief or opinion of the identity of a person; his hand writing; of the value of property, and the like. So of the second, *experts* or persons skilled in the science, profession or trade, to which the question has relation, may give their opinion in evidence. The opinions of medical men as to the cause of disease—the tendency of wounds, as well as the mental condition, are constantly received.—1 Greenl. Ev. § 440. But upon the question of sanity or insanity, the exception seems to extend beyond the opinion of medical men, and to allow the opinion of such witnesses, as from long intimacy, or familiar and frequent intercourse with the party alleged to be insane, peculiarly fit them to judge of his mental condition. Such opinion, however, must be preceded by the facts and circumstances

upon which it is predicated.—Boling v. Boling, ex'r, 8 Ala. Rep. 538; State v. Brinyea, 5 ib. 243; Roberts v. Traywick, 13 ib. 84; Clarke v. The State, 12 Ohio Rep. 483; Clary v. Clary, 2 Iredell's Rep. 78. In the case last cited, it is well observed " if the witness may be permitted to state he has known the individual for many years, has repeatedly conversed with him and heard others converse with him, and had noticed that in these conversations he was incoherent and silly; that in his habits, he was occasionally highly pleased and greatly vexed, without a cause; and that in his conduct he was irrational, extravagant and crazy; what would this be but to declare the opinion of the witness of what is incoherent or foolish in conversation, what reasonable cause of pleasure or resentment—and what the *indicia* of sound or disordered intellect? The court in that case held, that a witness who has had an opportunity of knowing and observing a person whose sanity is impeached, may not only depose to the facts he knows, but may also give his opinion or belief of his sanity or insanity. Such evidence seems generally to have been admitted in the Ecclesiastical Courts of England.—See Wheeler v. Alderson, 3 Hogg's Ecc. Rep. 574; 1 Greenl. Ev. 3d ed. 595, n. 6, and authorities cited; Phil. Ev. C. & H. notes, 759 n. 529. A person may be insane—he may carry along with him such marked and unmistakable indications of a diseased intellect, as to satisfy every one familiar with his habits and peculiarities that he is insane, yet perhaps but few persons, without giving an opinion, could so describe the pathological condition of his mind, as to communicate to a jury a distinct idea of his true condition. Shall the witness be confined to facts alone? Does not even a casual observer of mental phenomena fully recognize the impossibility of communicating to another the facts, and almost numberless minute circumstances, indicating a morbid action of the brain, and consequent mental aberration, the main force of which may consist in some peculiar characteristic, which none but the observer can fully appreciate? The jury, unlike the witnesses, have no knowledge of the condition of the accused from personal observation. How then shall they be placed in possession of those mysterious and indescribable phases which insanity wears, which, though they make a correct and vivid

impression upon the mind of the observer, yet lose much of their force by an attempted·description? Must the prisoner lose the benefit of such testimony altogether, or shall the witness be required to furnish as well as he may, a pantomimic delineation of the wild look, the vacant stare, the unnatural gait, the distorted countenance, the idiotic laugh, as well as the numberless caprices and sudden and apparently causeless exhibitions of joy and sorrow? Were such the law, the force of the testimony would be made to depend upon the powers of the witness for imitation. Besides, the whole would resolve itself into matters ·of opinion at last, since the witness would but exhibit, as well as he could, the *conception or opinion*, formed in his own mind, of the appearance and conduct of the prisoner. "But judgment," says Judge Gaston, in the case of Clary v. Clary, *supra*, "founded on actual observation of the capacity, disposition, temper, character, peculiarities of habits, form, features, or hand writing of others, is more than mere opinion. It approaches to knowledge, and is *knowledge* so far as the imperfection of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observation of others."

In the case before us, the witnesses whose opinions were offered, although not physicians, were nevertheless well qualified, from their long intimacy with the prisoner, and peculiar opportunities of observing his mental aberrations, to form a correct judgment concerning his true condition. Certainly no one than a parent has a better opportunity of knowing the mental condition of a child upon whom Providence has laid an afflicting hand ; and next to the parent, the person to whom such child may be turned over for instruction. We feel satisfied, both from reason and authority, the proof should have been received.

We do not agree with the attorney general that such opinions are confined to cases arising under contested wills, or in civil controversies. We see no reason and find no authority thus limiting the exception. Neither does the fact that a father may be induced to commit perjury to save life of the son,

in giving an incorrect opinion as to his sanity, render the proof illegal. The fact of relationship goes to the credit, not to the competency of the witness, and although some may be found base enough to yield to such temptation, and the guilty thereby escape, there will doubtless be cases where the unfortunate victim of disease or grief, whose derangement of mind deprives him of free agency, will be rescued from the gallows or penitentiary, so that he may share the benefit of some provision to be made for his restoration.

Our conclusion is that the opinions of the witnesses offered under the circumstances, should have been allowed to go to the jury for what they were worth, that the jury having scaned them might have determined whether the party was really insane when he committed the alleged offence, or whether his insanity was simulated.

Let the judgment be reversed, and the cause remanded.