# POWELL *vs.* THE STATE.

1. A *venire facias* is not void for the want of the seal of office of the court from which it issues.
2. No precise rule can be laid down as to the length or character of acquaintance which would render the opinion of a person not a physician admissible evidence on a question of insanity. In cases of general insanity—a total incapacity to distinguish right from wrong on any question—the same degree of observation is not required to discover the existence of the disease, as in cases of monomania or partial derangement, and therefore the same degree of intimacy is not necessary to render the opinion of the witness admissible ; but in every case, the circumstances must be such as to have afforded the witness the opportunity of forming an accurate judgment as to the existence or non-existence of the disease, considered with reference to the character or degree in which it is alleged to exist. (In this case the opinion of the witnesses, in connection with the facts to which they deposed, was ruled admissible.)
3. In a case in which insanity was relied on as a defence to an indictment for larceny, the bill of exceptions recited that the State offered to prove, by a witness who had known the prisoner two years before the commission of the alleged offence, "that the prisoner, in his opinion, was a man of sound mind, and not insane, and that he could distinguish right from wrong; to which the prisoner objected" : *Held*, construing the bill of exceptions most strongly against the exceptor, that the opinion of the witness referred to the prisoner's mental condition at the time of his previous acquaintance with him, and not at the time of the trial.

APPEAL from the Circuit Court of Coosa.

Tried before the Hon. ANDREW B. MOORE.

THE appellant, John C. Powell, was indicted at the Fall term, 1850, of the Circuit Court of Coosa, for grand larceny; to which he pleaded, not guilty, and insanity. From the bill of exceptions the following facts appear : " The State introduced a witness, who said, that he first knew the prisoner, in Chambers county, ten or twelve years since ; that he was then a boy, and going to school with witness' boys, and was sometimes (he would not say frequently) at his house, with his boys, in passing from school to prisoner's house ; that in 1845 the prisoner, with his father, removed to Coosa, and witness saw no more of him until he (witness) removed to

within a mile of prisoner's father, in Coosa, in 1847 ; that
he conversed with him frequently, on ordinary subjects,
during that year.   This witness, in answer to a question if
he could remember having conversed with the prisoner more
than twice in that year, said, that he had conversed with him
as much as that, but would not specify any other number of
times, nor the subject of said conversations.  He testified,
also, that the prisoner left his neighborhood early in 1848,
for the theatre of the Mexican war, and did not return until
the fall of that year ; that he believed he had conversed with
him oftener than twice during that year, but could not remem-
ber or specify any other number of times; that after that
fall he did not know where the prisoner was, not remem-
bering that he had again seen him until after the commission
of the alleged offence; that he was intimate with the pris-
oner's family ; that the prisoner was frequently at his house,
and he was frequently at the house of prisoner's father,
where the prisoner lived; that the prisoner could read,
write, and cipher, cut, plow, reap, sow, and do all other ordi-
nary farm work ;  that witness was a farmer, and no physi-
cian.   On this testimony, which was all witness said, the
State offered to show, by said witness, that prisoner was a
man of sound mind, and not insane ; to which the prisoner
objected.   The court overruled the objection ; the witness so
testified, and the prisoner excepted.   The State offered to
prove by said witness, also, that the prisoner, in his opinion,
could distinguish right from wrong ; the prisoner objected ;
the court overruled the objection ; the witness so testified,
and the prisoner excepted.

"The State also introduced another witness, who testified,
that he had known the prisoner for the last eight or nine
years, and was intimate with him some of the time ; that he
lived, during some of that time, within about half a mile of
prisoner's father ; that he had been with him at public gath-
erings, had met him on the road, and had seen him at his
house and other places; that he went to school with him a
few weeks, and lived in the house with him about two weeks,
and prisoner made some entries in witness' blacksmith books;
that he could recollect no particular conversation with him ;
that the usual subjects of talk between them were, the weather

Powell v. The State.

and his farming operations; that all his farming operations were in the field of his (prisoner's) father; that this acquaintance continued up to the time when the prisoner went to Mexico; that the prisoner could read, write, cipher, and do ordinary farm work.   On this statement, the State offered to prove, by this witness, who also testified that he was no physician, that the prisoner, in his opinion, was of sound mind up to the time when he went to Mexico; to which the prisoner objected.   The court overruled the objection; the witness so testified, and the prisoner excepted.

"The prisoner had introduced evidence, tending to show that, for several years previous to the commission of the alleged offence, he had been subject to periodical derangement of mind, that he was entirely insane at times, and was, at the time of the commission of the alleged offence, entirely insane, and incapable of distinguishing right from wrong.— The State also offered to prove, by the last named witness, that the prisoner, in his opinion, up to the time when he went to Mexico, viz., early in 1848, could distinguish right from wrong; to which the prisoner objected.   The court overruled the objection; the witness so testified, and the prisoner excepted."

After conviction the prisoner moved in arrest of judgment, first, on account of the defective indictment; second, because of a defect in the drawing of the grand jury; third, because there was no indictment.   On the trial of this motion, the prisoner excepted to the ruling of the court in refusing to let him prove, by the testimony of the judge of probate, that in fact no grand jury was drawn for the Fall term, 1850, of said Circuit Court, and that there was no evidence whatever in his office that any grand jury had been drawn for that term.   The bill of exceptions sets out, at length, the preamble of the court at its Fall term, 1850, the *venire facias*, with the sheriff's return thereon, the empanneling of the grand jury, and the return of an indictment by them against the prisoner; but it no where shows any ruling of the court in relation to these matters, nor any question arising thereon.

The errors assigned are: the several rulings of the court on the evidence, as above set forth, to which exception was taken; "6th, the refusal of the court to arrest the judgment;

7th, the *venire* was no *venire ;* 8th, the paper purporting to be a writ of *venire*, is not such a writ."

ELMORE & YANCEY, for the appellant :

The general rule is, that witnesses must testify to facts and not to opinions. In cases where the question is upon the insanity of a party, the rule has been extended, so as to allow persons who are proven to have had some peculiar opportunities of knowing the prisoner, and of observing his mind, from having intimacy and familiarity with him, to give their opinion after stating facts showing they can form a correct opinion.—The State v. Norris, 16 Ala. 776 ; Roberts v. Trawick, 13 *ib.* 84.

It is insisted, that neither of the witnesses examined to prove the sanity of the prisoner, was competent to give an opinion on that question : 1, they had no long familiarity or intimacy with the prisoner ; 2, they had no particular knowledge or observation of the workings of his mind. The first witness was not asked for his opinion as to the sanity of the prisoner, based on facts detailed by him, but was asked to depose to his sanity as an independent fact in the case, not connected with his detail of facts. This, it is insisted, he could not depose to : 1, because a witness can only give an opinion on that question, for the fact of sanity or insanity can alone be found by the jury ; 2, he can only give an opinion as based on facts to be detailed by him ; 3, it is to be left to the jury to say what his opinion is worth, by considering it in connection with the facts on which the witness founds his opinion.—The State v. Norris, 16 Ala. 776 ; Clark *ads.* The State, 12 Ohio R.; Grant v. Thompson, 4 Conn. 203.

This witness was requested to state if the prisoner was a sane man—was sane at the time of trial. It is insisted that the facts detailed by him show that he was not competent to give evidence upon that point at that time, as he had not known anything of him for a long time previous to the commission of the offence, and the record shows that he had been indicted for three years before the trial.—Dickinson v. Barker, 9 Mass. 225. It is insisted that a witness cannot testify, as a fact, that in his opinion a prisoner could distinguish right from wrong, for this is but a conclusion from

the evidence, which alone can be drawn by the jury ; and to allow a witness to swear to the sanity of the prisoner, and that he could distinguish right from wrong, would leave nothing for the jury to find on this plea.—2 Green. Ev. § 372.

It is also insisted, that even if a witness is competent, after detailing facts showing his competency to testify as to the capacity of the prisoner to discern right from wrong, he can only give his opinion in connection with those facts, and as based on them, in order that the jury may test the value of his opinion. Neither of the witnesses gave an opinion on this point, as based on such a statement, but deposed to the capacity of the prisoner, in this regard, without reference to such statement.—State v. Norris, 16 Ala. 776.

The first witness was asked as to the capacity of the prisoner to discern right from wrong, at the time of the trial, when from his statement of facts, he had not known anything of him for a long time before the deed was committed ; when the true issue was, could he do so at the time he committed the act.—2 Green. Ev. § 373 ; see answer of the judges in McNaughton's case, in Greenleaf on Evidence. The opinion of a witness not medical, being based on facts which he must detail, to be competent, must be confined solely to the time when the facts existed ; that is, if he details facts in 1850, he can only give an opinion for 1850. The jury alone can infer from these facts and that opinion that the prisoner was sane at a later period.

The judgment should have been arrested, because the paper purporting to be a writ of *venire* is not under seal. That writ is a part of the record of conviction.—State v. Williams, 5 Porter 130, 135 ; State v. Darin, 2 Speer's So. Ca. 211 ; The People v. McKay, 18 Johns. 212 ; McLeod v. Reid & Co., 20 Ala. 576 ; Clay's Digest, 452 § 10 ; Coll. on Part. §§ 717, 718. In criminal cases, the court will consider even slight errors as grounds of reversal, the intendments being *in favori libertatis et vitae.*

P. T. SAYRE, for the Attorney General, *contra :*

1. It is a well settled rule, that under certain circumstances, a witness may state his opinion as to the sanity or insanity of a party, who sets up insanity as a defence, even though the

3

witness be not a physician.—Norris v. The State, 16 Ala. 776.

2. The facts and circumstances, as detailed in the bill of exceptions, constituted a sufficient predicate for the admission of the testimony. These facts show, that the witnesses had opportunities of personal observation, from which they could come to some conclusion or belief, as to the sanity or insanity of the party, and nothing more is required. What weight will be given to an opinion thus formed, is a question for the jury.—2 Iredell 85 ; 16 Ala. 779.

3. A man is not to be excused from responsibility, if he can distinguish right from wrong, as to the particular act he is then doing.—McAllister v. The State, 17 Ala. 437. And the proper question to be decided by the jury, is, whether the prisoner knew right from wrong, at the time of doing the act.—2 Green. Ev. § 373 ; McAllister v. The State, *supra*.— The opinion of the witnesses as to whether the prisoner was sane or insane, did not meet the issue to be decided by the jury ; for, although he might be partially insane about some matters, and totally insane as to others, yet, if he knew right from wrong, at the time of the commission of this act, that partial or total insanity would not have availed as a defence. The very question, then, to be decided, was, Did the prisoner know right from wrong ? and that could only be answered by propounding the direct interrogatory to the witnesses, Did the prisoner, in their opinion, know right from wrong ? The same rule applies, as to those cases in which it become necessary to prove a certain state of mind, as to whether it was operated upon by love, fear, &c.; and this can only be established by opinion, based upon facts more or less conclusive, as the case may be.

4. Insanity must be proved to the jury, like other diseases or facts, and evidence of the state of mind of the party, both before and after the act done, is admissible.—McLean v. The State, 16 Ala. 680 ; McAllister v. The State, 17 *ib.* 438.

5. The indictment is good, and all the proceedings of the court appear to be regular. The court, therefore, committed no error in overruling the motion to arrest the judgment. A paper purporting to be a *venire facias* appears in the record, and under our statutes it will be held good. A *venire facias* is a writ, and " all writs issued from any of the courts, shall

bear teste in the name of, and be signed by, the clerk of the court from which they may be issued."—Clay's Digest 335, § 125. So, however it may have been at common law, "writs," in this State, are not required to be under seal. The practice in this State has never been to give sealed writs. The motion was made to arrest the judgment, because there was no *venire*. The object was, to make the motion in arrest do the office of a plea in abatement; but "no plea in abatement shall be allowed to the array of the grand jury, &c., except at the term at which the indictment is found."—Clay's Digest 458, § 51; The State v. Clarissa, 11 Ala. 61; Morgan v. The State, 19 Ala. 559. The pleading to the indictment admitted its genuineness (State v. Clarkson, 3 Ala. 383); and, besides, the statute requiring the clerk to mark "filed" on an indictment is merely directory, and cannot in any way affect the action of the grand jury.

GOLDTHWAITE, J.—That a *venire facias* was not void for want of the seal of office of the court from which it issued, was directly decided by this court in the case of Maher v. The State, 1 Porter 265; and as the question is purely a technical one, involving no principle, we do not feel authorized to depart from it.

In relation to the action of the court below, in allowing the opinion of certain witnesses, as to the sanity of the prisoner, to be given in connection with the facts stated by them, we are unable to discover any error in the shape in which the question is presented by the record. We have held, on several occasions, that the opinion of witnesses, in connection with the facts, was admissible, when it was apparent that those who were called upon to testify occupied a position toward the person alleged to be insane which enabled them to form a correct judgment as to his mental condition.—Roberts v. Trawick, 13 Ala. 84; State v. Norris, 16 Ala. 776; Florey v. Florey, 24 Ala. 241. This is the general rule; but in every case where this question arises, the character of the insanity is a matter of no small importance, in determining correctly as to the admissibility of the opinions of witnesses. If the evidence tended to establish that the prisoner, from mental imbecility, was incapable of distinguishing between right and

wrong, or that his case was one of general insanity, by which we mean madness on all subjects, it is obvious that it would not require the same degree of observation to discover the existence of the disease under such circumstances, as in cases of monomania or partial derangement, where the particular delusion might frequently escape the attention of the most acute observer, or the most intimate association. The circumstances which would enable the witness to form an accurate opinion as to the mental condition of the party in one case, would be worth nothing in the other. There are some diseases of the body, which it requires no physician to detect or pronounce upon. They are shown by external symptoms, so marked in their character, as to be readily seen and determined by every one of ordinary intelligence; and the total want of reason, as manifested by complete idiotcy, or the utter dethronement of the intellect, as exhibited by mania, or raving madness, seldom, if ever, requires any long acquaintance or close observation to discover. Opinion is necessary, for the reason that it may be impossible to convey to the mind of the jury through the medium of language, a distinct idea of the true condition of the party by a statement of the facts alone (Norris v. The State, *supra*); but it is impossible to lay down any precise rule as to the length or character of acquaintance which would render the opinion of a witness admissible on this question. All we can say is, that the circumstances must be such as to have afforded the opportunity to form an accurate judgment as to the existence or non-existence of the disease, considered with reference to the character or degree in which it is alleged to exist. Applying this principle to the case before us: If the defence relied on was general insanity, or an incapacity to distinguish right from wrong on any question, each of the witnesses whose testimony was objected to was competent, as their acquaintance with the prisoner was of a character which would render it next to an impossibility that if the disease had existed to that extent, they should not have known it. And their opinion as to his sanity, or (what is the same thing) his capacity to distinguish right from wrong, would, in that aspect of the case, when based upon the facts, be admissible; but if the insanity which was set up to excuse the prisoner was monomania—a particular delusion connected

with the act, such, for instance, as an insane conviction that the property taken belonged to him—then we agree that neither of the witnesses had that degree of knowledge of the party, which would enable him to form a correct opinion as to his sanity.

The record does not disclose as fully as it might the character of the insanity which was set up on the part of the prisoner, but it sufficiently appears that there was some evidence offered, tending to show that he could not distinguish right from wrong; and with a view to rebut testimony of this nature, we think, under the circumstances proved, it was competent for both of the witnesses to give their opinion, in connection with the facts, as to his mental condition, and to state the conclusion upon their minds (the result of their previous acquaintance and those facts), that he could distinguish between right and wrong.

It is insisted, however, that the record shows that one of these witnesses was permitted, against the objection of the defendant, to give his opinion as to his sanity at the time of the trial. We do not place that construction upon the record. The bill of exceptions, after stating the means of information which the witness had for knowing the mental condition of the prisoner, and after stating the facts tending to establish his sanity, proceeds thus: "The State offered to show, by said witness, that the prisoner was a man of sound mind, and not insane. The prisoner objected; the court overruled the objection, and the witness so testified. The State also offered to prove by said witness, that the prisoner, in his opinion, could distinguish right from wrong, and the prisoner objected; but the court overruled the objection, and the witness so testified." It is to be remarked, that the indictment was found in 1850, and the witness had testified he had no recollection of having seen the prisoner from 1848 until after the commission of the alleged offence. We think, therefore, that the natural inference would be, that in speaking of his sanity, he referred to the period of his acquaintance with him up to the time he last saw him before the offence. He says, in effect, that he knew the prisoner some years since, and is then asked, whether, in his opinion, he was of sound mind, and again, whether he could distinguish right from wrong. The

objection does not appear to be on the ground that the witness gave his opinion as to his sanity at the time of the trial, but that he gave his opinion at all. The bill of exceptions must be taken most strongly against the exceptor (Mallory v. Stodder, 6 Ala. 801); and without forcing the language employed, we may well suppose that the witness referred the sanity of the prisoner to the antecedents—to his knowledge of, and acquaintance with him, before the commission of the act. Had it been otherwise, the objection should have been more specific.

We see no error in the record, and the judgment is affirmed.