# Ford v. The State.

*Indictment for Murder.*

1. *Insanity as defense for crime; burden of proof.*—When insanity is set up as a defense in a criminal case, it must be established to the satisfaction of the jury, by a preponderance of the evidence; and a reasonable doubt of the defendant's sanity, raised by all the evidence, does not authorize an acquittal. (BRICKELL, C. J., *dissenting*.)
2. *Insanity fitful or occasional in character; not presumed to be continuous.*—It is only insanity of a chronic or permanent nature which, on be-

25

[Ford v. The State.]

ing proved, is presumed to continue; there is no presumption that fitful and exceptional attacks of insanity are continuous.

3. *Same; offense presumed to have been committed in lucid interval.* Where an insane person "has lucid intervals, the law presumes the offense of such person to have been committed in a lucid interval, unless it appears to have been committed in the time of his distemper."

4. *Voluntary drunkenness no excuse for crime.*—While voluntary drunkenness may some times operate to rebut the existence of malice, so as to reduce the grade of homicide, or other crime of which malice is a necessary ingredient, and, in many instances, a man may be so drunk as to be incapable of forming or entertaining any specific intention at all; yet, it can not be said, in any proper sense, that intoxication excuses the crime committed under its influence, or that the defendant should on that account be entirely acquitted of guilt.

5. *Threats by defendant against deceased; admissibility of.*—While threats by the defendant to kill *one* man may not be admissible under an indictment for the murder of, or assault with intent to murder *another*, threats to kill or injure some one not definitely designated, especially when made shortly before the commission of the offense to which they may be construed to have reference, are admissible in connection with other explanatory circumstances, on proof of the *corpus delicti.* It is a matter of mere inference whether the deceased came within the scope of such threats; and their weight or probative force, is a question entirely for the jury.

6. *Homicide; what admissible as an act of preparation.*—On the trial of a defendant for murder, it being shown that the homicide was committed in the afternoon, and that the defendant and deceased had had a difficulty in the morning of the same day, and that bad feelings existed between them during the intervening hours,—*held*, that the primary court committed no error in admitting the testimony of a witness for the State, against defendant's objection, to the effect that after the first difficulty, and a short time prior to the fatal act, the defendant had proposed to exchange knives with the witness, showing him at the time a small knife, and assigning as a reason, that his knife was too small. Such testimony may have been comparatively weak, but it was clearly relevant as an act of preparation, when taken in connection with the previous difficulty, and bad feelings between the parties.

7. *Charge assuming truth of evidence, where there is a conflict, properly refused.*—Where the evidence for a defendant on trial for murder tends to show that he was free from fault, and that he could not apparently have retreated with safety, but the evidence for the prosecution tended to prove the contrary, charges requested by the defendant as to self-defense, which assumed the truth of the evidence on his behalf, thereby withdrawing from the jury all consideration as to the truth or falsity of the conflicting evidence, are properly refused.

8. *Competency of witnesses who are not experts on question of insanity vel non.*—Where a witness who is not a medical expert expresses an opinion, affirming the insanity of a party, it is the better and safer practice that his opinion should be preceded by the facts and circumstances upon which it is based, they being necessarily eccentric manifestations and abnormal facts affirmative in their nature; but where the witness testifies to the sanity of a party, there may be no such eccentric manifestations or abnormal facts, and "he may testify to the non-existence thereof by way of general negative."

9. *Same.*—The competency of the witness in such case depends simply upon the fact, that he has an acquaintance with the party whose sanity is in issue, of sufficient duration and intimacy to have afforded him opportunities for such frequent observation as to justify the formation of a correct opinion.

10. *Same.*—It is impossible to lay down any precise rule as to the

[Ford v. The State.]

length or character of acquaintance which will render the opinion of such witness admissible; and it must rest, to a considerable extent, within the sound legal discretion of the primary court.

11. *Evidence; when party can not complain of ruling of primary court allowing irrelevant evidence.*—When a defendant in a criminal case, on direct examination of his own witness, elicits irrelevant evidence, he can not complain that the prosecution is allowed, on cross-examination, to bring out other irrelevant evidence, by way of explanation or rebuttal, touching the same subject-matter.

APPEAL from the City Court of Montgomery.

Tried before Hon. THOMAS M. ARRINGTON.

Joseph Ford, defendant in the lower court, was indicted for the murder of William Y. House, "by striking him with a brick or brickbat;" and he was convicted of murder in the second degree, and sentenced to the penitentiary for ten years.

The evidence for the prosecution tended to show that on the 14th June, 1882, in the afternoon between five and six o'clock, the defendant struck the deceased with a brickbat about half the size of a brick, near the post-office in the city of Montgomery, and the deceased died on the following day from the effects of the wound; that about eleven o'clock on the morning of the fatal act the defendant and deceased had a quarrel in a bar-room, and that bad feelings existed between them during the day; that the defendant during the day made several threats against the deceased; and that both parties had been drinking, and were somewhat under the influence of intoxicating liquors at the time of the killing. The evidence for the State further tended to show that the defendant brought on the difficulty that resulted in the death of the deceased, and struck the latter without any provocation. On the other hand, some evidence was introduced by the defendant, tending to show that he acted in self-defense.

Insanity was one of the defenses set up by the defendant, and, for the purpose of proving it, he examined several witnesses, whose testimony is given at length in the bill of exceptions. The testimony of these witnesses tended to show that the defendant was a man of weak mind, and that he was, and had been for several years subject, when under the influence of excitement, produced by passion or drink, to mental aberrations, and occasional and fitful attacks of insanity; numerous acts, at different times and places, done by the defendant, excentric and abnormal in their character, being testified to; and the opinions of witnesses given, that at such times the defendant was insane. The testimony of these witnesses further tended to show that the defendant's father was subject, under the same conditions, to similar attacks, and that two of his brothers and a sister were of unsound mind. There was a conflict in the evidence, how-

[Ford v. The State.]

ever, as to the insanity of the defendant, of his father, and of one of his brothers.

The State examined several witnesses, who were not medical experts, in rebuttal of the testimony offered by the defendant as to the insanity of himself, his father, and one of his brothers, whose testimony tended to show that all three of them were of sound mind. The testimony of the witnesses as to the sanity of the father and brother, and that of some of the witnesses as to the defendant's sanity showed an intimate acquaintance with them of several years duration. One of the witnesses for the State as to the sanity of the defendant testified touching his knowledge of the defendant, and his acquaintance with him, substantially as follows: He had known defendant since he was a boy, and had met him almost daily, but had not been intimate with him. Witness only knew defendant's business from hearsay; had met him on the streets numbers of times; had seen him at the depot, on the engine out on the road (the defendant having been shown to have been at one time a fireman on a locomotive), and at conventions, elections and other places; had a good many conversations with him, but never had a long conversation with him; did not suppose that he ever had a conversation with him that lasted over five minutes. Another witness testified as to his acquaintance with, and knowledge of the defendant as follows: "That he had known defendant since he (defendant) was a boy; have met him casually on the streets, sometimes by himself, and sometimes in crowds; have talked with him on the streets, and have heard him talk to other people; have just heard him talking generally; have conversed with him, and have heard him converse with others frequently, and at divers times in a long course of years." The State asked each of the witnesses examined by it as to the defendant's sanity, after making preliminary proof by him of his acquaintance with, and knowledge of the defendant, as stated above, whether, in his opinion, the defendant was sane or insane. To this question, as propounded to each of the witnesses, the defendant objected, on the ground that the facts stated by the witnesses did not show that he had sufficient knowledge of the defendant to testify as to his sanity or insanity; but his objection was overruled, and the witness allowed to answer the question, and the defendant excepted. In answer to this question each witness answered, in substance, that, in his opinion, the defendant was sane. Similar proof was made as to the defendant's father, and as to one of his brothers, similar questions propounded, answers given, and exceptions reserved.

One Cheatham, a witness examined by the defendant as to the defendant's sanity, testified on direct examination that after the defendant's arrest, the defendant sent for him, and he went

[Ford v. The State.]

to the jail to see him; and, after talking with him awhile, witness asked him what he wanted to know, and why he had sent for him; and that he replied that he wanted to know when the August election was coming on, and asked witness to tell a certain candidate that he, defendant, wanted to take a hand. On cross-examination by the State, this witness was allowed to testify, against the defendant's objection, (1) that said candidate was a man of considerable influence; (2) that at a certain primary election between said candidate and his opponent, the defendant worked for said candidate and against his opponent; and (3) that in said primary election the witness was a partisan of said candidate, and that the defendant knew this fact. The defendant duly reserved exceptions to the questions calling for this testimony, and to the rulings of the court overruling his motions to exclude the answers from the jury.

An exception was also reserved by the defendant to certain testimony elicited by the State from one Malloy; but the character of this testimony is sufficiently indicated in the opinion. An exception was also reserved by the defendant to the admission in evidence of certain threats made by the defendant, the character of which is indicated in the opinion.

The bill of exceptions purports to set out all the evidence; and after the general charge, to which no exceptions were reserved, the court, at the written request of the State's solicitor, gave to the jury the following, among other, charges: 3. "When the plea of insanity is set up as a defense, the burden of proof is on the defendant to show that, at the time the fatal blow was given, he, defendant, was so insane as to be unable to distinguish between the right and wrong of the act being done, i. e. the killing; and he must show this to the satisfaction of the jury by a preponderance of the evidence." 4. "Drunkenness is no excuse for crime; and if the jury believe from the evidence beyond a reasonable doubt, that at the time defendant killed House, he, defendant, was drunk or intoxicated, he should not be excused or acquitted on that account." 5. "If the defendant has failed to satisfy the jury by a preponderance of all the evidence, that, at the time he struck House the fatal blow, he, defendant, was insane; or if a preponderance of all the evidence satisfies the jury that at said time defendant was sane, then the jury should not excuse or acquit the defendant on said plea of insanity." 6. "The law presumes sanity, and that presumption must prevail until it is overcome; and insanity is a defense which must be proved to the satisfaction of the jury by that measure of proof which is required in civil cases; and a reasonable doubt of defendant's sanity, raised by all the evidence, does not authorize an acquittal. And when insanity is set up as a defense in a criminal case, whether the evidence of it

[Ford v. The State.]

arises out of the testimony which proves the commission of the act, or is shown *aliunde*, it is insufficient, unless it overturns the presumption of sanity; and moral insanity, which consists of irresistible influence, co-existing with mental sanity, has no support either in psychology or law." To each of these charges the defendant excepted.

The defendant also reserved exceptions to the refusal of the court to give the following, among other, charges requested by him in writing: 17. "If upon the evidence the jury have a reasonable doubt that Ford was sufficiently sane and in his right mind, to know the difference between right and wrong in striking House with the piece of brick at the time he struck House· with the piece of brick, the jury must find the defendant not guilty." 24. "If after the consideration of all the evidence in the case, the jury have a reasonable doubt as to whether the defendant was insane or not, at the time he struck House with the piece of brick, they must find the defendant not guilty." 25. "The burden is on the State to prove all that is necessary to constitute the crime of murder; and, as that crime can only be committed by a person of sane mind, the burden is upon the State to prove that the defendant was sane, when he committed the act of killing. 29. "If the jury believe from the evidence that insanity existed in the family of the defendant prior to the homicide, and that, among others of the family of defendant, his father was insane at intervals; and if the jury further believe from the evidence that the defendant had been suddenly or temporarily insane before the homicide in this case was committed by defendant, then the burden of proof is on the State to show that, at the time the offense in this case was committed by defendant, he was sufficiently sane to realize the consequence of his act."

The rulings of the City Court above noted are here assigned as error.

BRAGG & THORINGTON, and J. M. FALKNER, for appellant. (1) The court erred in overruling the motion to exclude the testimony of the witness Malloy in reference to the proposal of the appellant to swap knives with him. There was nothing in this evidence that connected it directly or indirectly with House, or with the difficulty with House. (2) The court erred in overruling the objection of the appellant to the testimony of Cheatham. This was wholly irrelevant, and was calculated to prejudice the jury against the accused. (3) The court erred in overruling appellant's objections to the questions calling for witnesses' opinion as to the sanity of the defendant.—*Roberts v. Trawick*, 13 Ala. 68; *Norris v. State*, 16 Ala. 778; *Powell v. State*, 25 Ala. 29; *State v. Brinyea*, 5 Ala. 243. (4). "A

[Ford v. The State.]

sense of duty compels us to earnestly and respectfully insist before this court, that the rule laid down, as to the burden of proof in cases of insanity, in the case of *Boswell v. State*, 63 Ala. pp. 324–6, is unsound, and has been productive of great injustice and injury to the accused in this case on the trial in the court below. The able and learned opinion in that case is, it is true, sustained by the authorities there cited, and also by other authorities, which were doubtless considered by the court in deciding that case; but we respectfully submit that the better rule, a more just rule, and a rule which is more in accordance with the reason, with the logic, and with the humanity of the law, is laid down in the following authorities:—*State v. Garbutt*, 17 Mich. 9; *State v. O'Connell*, 87 N. Y. 377; *State v. Cunningham*, 56 Miss. 269; *State v. Chase*, 40 Ill. 352; *State v. Crawford*, 11 Kan. 32; *State v. Wright*, 4 Neb. 408; *State v. Jones*, 50 N. H. 369; *State v. Dove*, 3 Heisk. (Tenn.) 348; *State v. Guetig*, 66 Ind. 94. Many other authorities might be cited, but only leading cases have been selected where the whole subject is discussed.". Upon these authorities it is contended, that the court erred in its several rulings on the charges on insanity. (5) The charge numbered 3, given at the request of the State, is erroneous, because it directs the jury to find according to the preponderance of the evidence.—*Mays v. Williams*, 27 Ala. 267; *Vandeventer v. Ford*, 60 Ala. 610.

H. C. TOMPKINS, Attorney-General, for the State. (1) The threats made by defendant, not directed against any known person, as well as the effort to exchange his knife for a larger one, were all made after the first difficulty with deceased in the morning. The testimony tended to show that from that time on the defendant continuously harbored a purpose to avenge a supposed affront by deceased, and to prepare himself to take his life, or to do him great bodily harm. There was evidence of threats made during the interval directly against deceased, and of preparation made to injure him. Certainly, in connection with the other evidence in the case, the jury had a right to infer that these threats were intended for deceased, and that the effort to procure a larger knife was an evidence of his purpose to do him harm. The acts of the defendant from the time of the first quarrel constituted one continuous transaction, and evidence of any fact which tends, even in the slightest degree, to show his state of mind, or throw light upon his purposes was proper for the consideration of the jury.—*Campbell v. State*, 23 Ala. 44; *Armor v. State*, 63 Ala. 173; Whart. on Crim. Ev. §§ 753–6. (2) The evidence elicted by the defendant from the witness Cheatham touching the August election was irrelevant; and hence, the testimony on cross-examination, if irrelevant, was

[Ford v. The State.]

merely explanatory of the irrelevant testimony brought out by the defendant on direct examination ; and he can not be heard to object. (3) The witnesses examined by the State were fully competent to testify to their opinions of the sanity of defendant.—*Powell v. State*, 25 Ala. 21 ; *Walker v. Walker' Ex.* 34 Ala. 469 ; *Stubbs v. Houston*, 33 Ala. 555. (4) No principle of law is better settled than that one who prepares himself for, and brings on a difficulty with another, can not excuse himself for taking the life of that other upon the ground of self-defense. No party can justify on that ground, where the evidence shows that he brought on, or encouraged the difficulty, or that there was no reasonable apprehension of loss of life, or great bodily harm, or that there was other reasonable mode of escape from the danger.—*Cross v. State*, 63 Ala. 40 ; *Eiland v. State*, 52 Ala. 322 ; *Mitchell v. State*, 60 Ala. 26 ; *Myers v. State*, 62 Ala. 599 ; *McNeezer v. State*, 63 Ala. 169 ; *Ingram v. State*, 67 Ala. 67. (5) The law in this State does not recognize so-called temporary insanity. Any man whose passions are aroused beyond control, may be said to be temporarily insane ; but that does not justify crime. The insanity which excuses from the penalities of crime must be something more than a temporary dethronement of reason. So it may be taken as settled by *Boswell's case*, 63 Ala. 307, that, to make out the defense of insanity, defendant must do more than create by the evidence a reasonable doubt of his sanity ; he must establish the fact to the satisfaction of the jury by that measure of proof which is required in civil cases. That case lays down the true rule both in principle, and as held by a majority of decisons ; and the court is referred to the following authorities sustaining and defending the principle, not referred to in that case: Whart. on Crim. Ev. § 340 ; *Dejarnette v. Commonwealth*, 75 Va. 867 ; *McLean v. State*, 16 Ala. 672 ; *State v. Bruce*, 48 Iowa, 530 ; *State v. Grear*, 29 Minn. 221 ; *Carter v. State*, 56 Ga. 463 ; *Webb v. State*, 9 Tex. (Ct. of Ap.) 490 ; *Johnson v. State*, 10 *Ib.* 571 ; *State v. Hoyt*, 46 Conn. 330 ; *Coyle v. Commonwealth*, Amer. Law Reg. vol. 22, p. 191 ; Code of 1876, § 1487.

SOMERVILLE, J.—The main question presented for our consideration in this case relates to the rule governing the burden and sufficiency of proof in criminal cases, where the defense of insanity is interposed. This question was fully and elaborately considered by this court in *Boswell's case*, 63 Ala. 307, decided in the year 1879, where the authorities on the subject in both England and America are lucidly reviewed in the opinion of Mr. Justice STONE, speaking for a majority of the court. The doctrine is there held, that *insanity* is a de-

[Ford v. The State.]

fense which must be established *to the satisfaction of the jury,
by a preponderance of the evidence*, and *a reasonable doubt* of
the defendant's sanity, raised by all the evidence, *does not au-
thorize an acquittal.* A strong appeal is made by counsel,
urging that this case, which was decided by a majority of the
court, should be overruled, as repugnant to the sound logic of
the law, and not in harmony with settled analogies of criminal
jurisprudence. ·I confess, if the question were· a new one,
that, apart from authority, I should be greatly disposed to favor
the view, that although the law presumes sanity, it at the same
time presumes innocence, that these presumptions are each dis-
putable, and must go to the jury, to be considered by them in
connection with the other evidence; and that if the jury, upon
the facts and conflicting presumptions of the whole case, en-
tertain a reasonable doubt that the crime charged was com-
mitted by the prisoner while in a sane state of mind, he is en-
titled to an acquittal. This is the modern or strictly American
doctrine, and finds no countenance, so far as I can discover,
among the best law-writers or adjudged cases in England. It
seems to be approved by Mr. Bishop alone of the American
text-writers, and finds support in the decisions of only some
nine or ten of the highest courts of the several States.—2 Bish.
Cr. Proc. § 673; *O'Connell v. The People,* 87 N. Y. 377;
*Cunningham v. State,* 56 Miss. 269; *People v. Garbutt,*
17 Mich. 9; *State v. Crawford,* 11 Kansas, 32; *Guetig v. State,*
66 Ind. 94 (S. C. 32 Amer. Rep. 99); *Chase v. People,* 40 Ill.
352; *Wright v. People,* 4 Neb. 407; *State v. Jones,* 50 N. H.
369; *Dove v. State,* 3 Heisk. (Tenn.) 348; *State v. Patterson,*
45 Vt. 308; *State v. Waterman,* 1 Nev. 543.

The doctrine of *Boswell's case,* which repudiated the ordinary
rule of "reasonable doubt" as applicable to insanity cases, is,
however, sustained by the great weight of authority. It
seems to be approved by all of the English text-writers and ad-
judged cases, coming with the sanction of the common law,
which, for many forcible reasons, placed insanity upon a basis
somewhat different from other defenses.—*McNaghten's case,*
10 Cl. & Fin. 200; *Reg. v. Higginson,* 1 C. & K. 130; 1 Rus-
sell on Cr. (9th Ed.) 5–25. It is said in Roscoe's Criminal
Evidence that "the *onus* of proving the defense of insanity,
or, in the case of lunacy, of showing that the offense was
committed when the prisoner was in a state of lunacy, lies on
the prisoner."—Roscoe's Cr. Ev. (7th Ed.) 975. In Foster's
Crown Law it is said, "all the circumstances of accident, neces-
sity or *infirmity*, are satisfactorily to be proved by the
prisoner."—Fost. 255.

Among the American authors Mr. Wharton strongly favors
the view, that the burden of proof is on the defendant to prove

his insanity by a preponderance of the evidence—the defense being said to be extrinsic, and likened to an application in "the nature of a plea to the jurisdiction, or a motion to change the venue."—Whart. Hom. § 668; Whart. Cr. Ev. § 340; Whart. Cr. Law (7th Ed.) § 54. Mr. Greenleaf says that the defense "must be clearly proved:" and again, that it "must be established by evidence satisfactory to the jury."—2 Greenl. Ev. § 373; 3 *Ib.* § 5. The adjudged cases in this country present a vast weight of authority favorable to the doctrine of *Boswell's case*, or at least in repudiation of the rule entitling the defendant to an acquittal upon the existence of a mere reasonable doubt of his sanity. Many of these cases state the rule more strongly against the defendant, and some go to the length that the defendant must establish his insanity to the satisfaction of the jury, beyond a reasonable doubt. These views prevail in some eighteen or twenty of the States.—*McAllister v. State,* 17 Ala. 434; *Com. v. Heath,* 11 Gray (Mass.) 303; *Sayres v. Com.* 88 Penn. St. 291; *State v Felter,* 32 Iowa, 49; *State v. Payne,* 86 N. C. 609; *Graham v. Com.* 16 B. Mon. (Ky.) 587; *State v. Strauder,* 11 West Va. 745, 823; *State v. Stark,* 1 Strob. (S. Ca.) Law, 479; *State v. Lawrence,* 57 Me. 574; *State v. Redemeier,* 71 Mo. 173; *Bergin v. State,* 31 Ohio, 111, 115; *Webb v. State,* 9 Tex. (Ct. Ap.) 490; S. C. 35 Amer. Rep. 32, note; *Boswell's case,* 20 Gratt. (Va.) 860; *People v. Messersmith,* 57 Cal. 575; *State v. Gut,* 13 Minn. 341; *McKenzie v. State,* 26 Ark. 334; *Carter v. State,* 56 Ga. 463; *State v. Spencer,* 1 Zabr. (N. J.) 196, 201; *State v. Danby,* 1 Hous. Cr. Cases (Del.) 166, 175; *State v. Hoyt,* 46 Conn. 330.

In view of these considerations we are of opinion that the rule declared in *Boswell's case* should not be disturbed. It establishes a rule greatly favorable to the preservation of human life, and to the good order and peace of society. It discourages the recognition of that species of frenzy, known as "moral" or "emotional" insanity, which, without any support in the law, sometimes finds countenance at the hands of juries in contempt of its integrity. It is based upon the broad presumption, which receives universal recognition in all the affairs of life, that sanity is the normal condition of all mankind, and upon the teachings of experience that criminals often take refuge in attempting the simulation of insanity under circumstances rendering it most difficult of detection. The history of criminal jurisprudence in this country, it is apprehended, fails to show any danger from the inhumanity of juries in the harsh or unreasonable administration of the rule.

This rule, it may be added, fully harmonizes with the provisions of our statute authorizing the judges of our circuit courts to order an inquisition in the case of criminals alleged

[Ford v. The State.]

to be insane, with the view of committing them to the State hospital for insane persons. The commitment is authorized " if it be *satisfactorily proved* that the person is insane," and he is required to remain in custody until he is restored to his right mind.—Code, 1876, §§ 1487-88. It is manifest that great confusion might follow in the administration of justice, if one rule should be adopted in the trial of defendants alleged to be insane, and another in judicial inquisitions. A case might not be improbable where a prisoner, charged with murder, might be acquitted on the ground of homicidal insanity, because of the bare existence of a reasonable doubt, and yet there might not be such a preponderance of evidence against him as to satisfy the judge or jury of his insanity in a judicial inquisition. One dangerous to the community would thus be set at large, beyond the pale of legal punishment or custody, until a second or third homicide might operate to remove the existing reasonable doubt.

We find no error in the rulings of the court, relevant to the defense of insanity, which can authorize a reversal of the judgment under the above views.

There is no presumption that fitful and exceptional attacks of insanity are continuous—a proposition manifest in itself. It is only insanity of a chronic or permanent nature which, on being proved, is presumed to continue.—Whart. Cr. Ev. § 730. The rule, therefore, prevails that where an insane person "has lucid intervals, the law presumes the offense of such person to have been committed in a lucid interval, unless it appears to have been committed in the time of his distemper."—1 Russell on Cr. 11; 1 Hale, 33-4. Charge number twenty-nine, requested by the defendant, was properly refused on this principle. There was no evidence tending to show that the alleged insanity of the prisoner was any thing more than fitful or occasional.

The principle is everywhere recognized, that voluntary drunkenness or intoxication is no *excuse* for the commission of crime. Roscoe's Cr. Ev. 985 ; 1 Arch. Cr. Pl. 11–14. This in nowise 'conflicts with the rule, that it may some times operate to rebut the existence of *malice*, so as to reduce the grade of the homicide, or other crime, of which malice is a necessary ingredient. So, in many instances, a man may be so drunk as to be incapable of forming or entertaining any specific intention at all.—*Mooney v. State*, 33 Ala. 419; *Ross v. State*, 62 Ala. 225 ; 1 Russ. on Cr. 12–13. Yet it can not be said in any proper sense that the existence of intoxication excuses the crime committed under its influence, or that the defendant should on that account be entirely acquitted of guilt.—1 Bish. Cr. Law, § 400. The fourth charge, given at the instance of the State, was free from error.

If its tendency was merely misleading, as being too broad in its application to a particular phase of the case, an explanatory charge should have been requested.

Threats made by a defendant are generally admitted as tending to prove malice on his part against a deceased person with the killing of whom he is charged. To be admissible they must of course be capable of such construction as that they may have reference to the deceased. A threat to kill one man may not be admissible under an indictment charging the defendant with the murder of, or assault with intent to murder another and different man.—*Ogletree v. State*, 28 Ala. 693. But threats to kill or injure some one not definitely designated, especially when made shortly before the commission of the offense to which they may be construed to have reference, are unquestionably admissible in connection with other explanatory circumstances, and on proof of the *corpus delicti*. The threats of a general character, made the subjects of objection in the record, all come within the influence of the above principle, and were properly admitted. It was a matter of mere inference whether the deceased came within their scope. Their weight or probative force was a question entirely for the jury.—Whart. Hom. § 693; *People v. Scoggins*, 37 Cal. 677; S. C. Cases Self-Def. (Horr. & Thomp.) 596; *Ross v. State*, 62 Ala. 225; Whart. Cr. Ev. § 756; *Redd's case*, 68 Ala. 492.

There was no error in admitting the testimony of the witness, Malloy, to the effect that, an hour or two before the difficulty, the defendant had proposed to exchange knives with him, showing at the time a *small* three-bladed knife, and assigning as a reason that his knife was *too small*. It may have been comparatively weak, but it was clearly relevant as an act of preparation, when taken in connection with the previous difficulty or bad feeling between the parties, and as one link in the chain of circumstances intervening during several hours immediately prior to the killing.

Conceding that the defendant's testimony tended to prove that he was *free from fault* in having brought on himself the necessity of the killing, and that he could not apparently *retreat with safety*, yet there was also other evidence tending to prove the contrary, and all the charges requested bearing on the question of self-defense withdrew from the jury all consideration as to the truth or falsity of this conflicting evidence, and they were for this reason properly refused. These charges assumed the truth of the defendant's version as to these two material aspects of the case, which could not be ignored by the jury in forming their verdict.—*Leonard's case*, 66 Ala. 461; Roscoe's Cr. Ev. (7th ed.) 739; *Cross v. State*, 63 Ala. 40, and other authorities cited in Clark's Cr. Dig. (1881) § 490.

[Ford v. The State.]

As to witnesses who are not medical experts, the doctrine is clearly settled in this State, in accordance with the general current of authority, that they may express their opinion, in certain cases, as to the sanity or insanity of one whose state of mind is the subject of investigation. To authorize this, however, it must first be shown that the acquaintance of the witness with the party whose sanity is questioned, is of an intimate character, and his association with him of sufficient duration to justify him in forming a correct judgment as to the intellectual *status* and habits, upon which he seeks to throw the light of his testimony.—*In re Carmichael*, 36 Ala. 514. It is said in our decisions generally that such witnesses, not being experts, should accompany their opinions with the facts upon which they are based; and in *Norris v. State*, 16 Ala. 778, where the witness was introduced to prove the insanity of the prisoner, it was asserted that his opinion " must be preceded by the facts and circumstances upon which it is predicated."—*Florey v. Florey*, 24 Ala. 241; *Powell v. State*, 25 Ala. 21. This is no doubt the better and safer practice in all cases where opinions are expressed by non-experts affirming the *insanity* of a party. Here the eccentric manifestations and abnormal facts, being affirmative in their nature, can be readily stated in advance, and, constituting the basis of the opinion, may be said to determine its value and weight. But where the witness testifies to the *sanity* of a party, there may be no such abnormal facts to be stated. He may testify to the non-existence of such facts by way of general negation. The competency of the witness, therefore, *in limine*, depends simply upon the fact that he has an acquaintance with the party, whose sanity is questioned, of sufficient duration and intimacy to have afforded him opportunities for such frequent observation, as to justify the formation of a correct opinion as to the question of sanity or insanity.—*Stuckey v. Bellah*, 41 Ala. 700. It was properly observed in *Powell v. State*, 25 Ala. 28, that, "it is impossible to lay down any precise rule as to the length or character of acquaintance which would render the opinion of a witness admissible on this subject." It must rest, to a considerable extent, within the sound legal discretion of the *nisi prius* court, the value of such opinions being susceptible of easy test through the crucible of cross-examination. The several non-expert witnesses, who were introduced by the State to prove the sanity of the defendant, were in our judgment shown to have been *prima facie* competent.—*Stubbs v. Houston*, 33 Ala. 555; Whart. Cr. Ev. § 417; 1 Redfield on Wills, 141; 1 Russell on Cr. (9th Ed.) 26, *note* 1; *Pidcock v. Potter*, 68 Penn. St. 342; S. C. 8 Amer. Rep. 181; *Hardy v. Merrill*, 56 N. H. 227; S. C. 22 Amer. Rep. 441; *Stuckey v. Bellah*, 41 Ala. 700, 1 Whart. Law Ev. § 451.

[Royston v. May.]

Where a defendant on his trial elicits irrelevant evidence from his own witness on direct examination, he can not complain that the State is permitted to bring out other irrelevant matter by way of explanation or rebuttal, touching the same subject-matter.—Starkie's Ev. (Sharswood) 201, *note; Havis v. Taylor,* 13 Ala. 324; *Findlay v. Pruitt,* 9 Port. 195. Great latitude must necessarily be allowed in the cross-examination of witnesses, and much left to the enlightened discretion of the lower courts, by whom alone the temper, demeanor and prejudices of the witness can be observed and known.—*Marler v. State,* 68 Ala. 580. In view of this principle, and apart from other satisfactory reasons unnecessary to be discussed, there was no objection to the evidence elicited on cross-examination of the witness Cheatham.

We discover no error in the rulings of the City Court, and its judgment is affirmed.

BRICKELL, C. J., *dissenting.*