The appellant was indicted for three offenses of burglary in the third degree, in violation of § 13A-7-7, Code of Alabama
1975, and the three cases were consolidated for trial. He was convicted of one offense of burglary in the first degree. Before trial, the State filed a motion to have a psychiatric evaluation of the appellant conducted, and the appellant was sent to Taylor Hardin Secure Medical Facility for evaluation. A psychiatric report was returned to the trial court, and the judge initially determined that the appellant was not competent to stand trial. Although the report indicated that the appellant was suffering from certain mental diseases and symptoms when he committed the offenses, one of the examining physicians determined that the appellant was competent to stand trial. Therefore, the cases were placed on the trial docket; however, during a pretrial hearing, the defendant began to display certain abnormal behavior, including asserting that he was the President of the United States and that he spoke regularly to Michael Jackson, which behavior necessitated the trial court to again have the appellant sent to Taylor Hardin for further evaluation. The reports from one of the psychiatrists at Taylor Hardin during this second evaluation indicated that, although the appellant had certain mental diseases, he was competent to stand trial.
Following the trial, the jury found the appellant not guilty by reason of insanity or mental defect as to two burglaries, but guilty as charged as to one burglary. The appellant was sentenced to 10 years' imprisonment pursuant to the Habitual Felony Offender Act.
The three burglaries that were the subject of the appellant's prosecution occurred within a period of approximately seven weeks. During the first burglary, the appellant *Page 144 
entered the victim's house through a window, cooked eggs in the victim's kitchen, and left the kitchen in disarray. He also drank beer that he found in the victim's refrigerator and watched television in the victim's living room. He spent the night at the victim's home and, upon leaving, took certain stereo equipment and a hat belonging to the victim's father. In the next burglary, the appellant entered a female victim's house and entered her bedroom, where he began watching television. She found the appellant in her house and, when she asked him why he was there, he indicated that he was there pursuant to his job. He then began running in circles and crying, "Miss, Miss, Miss." He escaped from her house. The last burglary occurred when the appellant again entered the first victim's house. This time, however, the victim found the appellant in his house and began chasing him. He managed to catch the appellant and to knock him into the wall, rendering him unconscious. However, while the victim tried to get help, the appellant regained consciousness and escaped, after taking a little money from the house. When the appellant was finally arrested, he was wearing the victim's father's hat. The appellant admitted to the police that he had broken into the first victim's house, and, when the police officers attempted to have the appellant write out his statement, the appellant's language and sentence construction mandated that the officer take the appellant's statement orally and then type the statement.
On appeal, the appellant argues that the State failed to present sufficient evidence of the offense or, alternatively, that the evidence concerning the appellant's insanity required that his conviction be overturned. Although the evidence as to the appellant's insanity is quite strong and convincing, we cannot say that there was no evidence to support the jury's verdict. The fact that the jury found the appellant not guilty by reason of insanity as to two of the burglaries, while finding her guilty as to one of the burglaries, indicates a thoughtful evaluation and weighing of the evidence. Moreover, the police officers who apprehended the appellant and took his statement testified for the State that when he was arrested the appellant appeared to understand his rights and that he appeared to be aware of the nature of the charges against him. There was also evidence that, although the appellant denied any knowledge of the burglary of the female victim's house and appeared to remember nothing of the event, he did admit to having committed the first burglary and he remembered some of the circumstances of that burglary. Dr. Nagi, a psychiatrist from Taylor Hardin who testified for the defense, stated that the appellant could possibly have had lucid intervals. Moreover, the fact that all of the expert witnesses testified for the defense is not a reason to overturn the jury's verdict because "[a] factfinder is not bound by expert testimony 'even if all of the witnesses are presented by only one side.' "Ellis v. State, 570 So.2d 744, 752 (Ala.Cr.App. 1990), quotingUnited States v. Pitts, 428 F.2d 534, 536 (5th Cir.), cert. denied, 400 U.S. 910, 91 S.Ct. 154, 27 L.Ed.2d 149 (1970).
 " '[I]nsanity is a defense which must be established to the satisfaction of the jury, by a preponderance of the evidence, and a reasonable doubt of the defendant's sanity, raised by all the evidence, does not authorize an acquittal.' Ford v. State, 71 Ala. 385, 392-93 (1882). See also Gunter v. State, 83 Ala. 96, 107-08, 3 So. 600, 605-06 (1888); Maxwell v. State, 89 Ala. 150, 164, 7 So. 824, 829 (1890). 'Presentation of a mere reasonable doubt of sanity does not authorize an acquittal.' Sistrunk [v. State], 455 So.2d [287] at 289 (Ala.Cr.App. 1984).
". . . .
 " 'This court cannot undertake to reconcile conflicting testimony of witnesses on the trial or to weigh the evidence, except in such cases where the great and overwhelming weight of the evidence convinces the court that the verdict was the result of influences not properly considered.' Freeman v. State, 21 Ala. App. 629, 630, 111 So. 188, 189 (1927). Here, the jury unravelled the complex emotional testimony in the case at bar and concluded either that the defendant was not *Page 145 
suffering from a mental disease or defect or that the disease or defect did not substantially affect her capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law. While the members of this court might have reached a different verdict on the same evidence presented, we cannot say that the jury arbitrarily ignored the expert testimony before it."
Ellis v. State, supra, at 754, 754-57. (Emphasis in original.)
After a thorough review of the record and the evidence presented, we conclude that the jury's verdict was not arbitrary and that there was evidence from which the jury could reasonably conclude that the appellant was not suffering from insanity or mental defect when he committed the first burglary.
AFFIRMED.
All Judges concur.