[Birmingham Railway & Electric Co. v. Ellard.]

Birmingham Railway & Electric Co. *r.* Ellard.

135 | 433
--- | ---
143 | 42

*Action against Street Railway Company by Passenger to recover Damages for Personal Injuries.*

1.  *Trial and its incidents; examination of witness.*—In the examination of a witness, it is the duty of the court to see that an orderly examination is conducted and that the .witness is not unduly hastened; and if, in the cross-examination of a witness she asks to be given time, and the court says to the counsel examining her to give her time to answer the questions, to which the counsel replies that he has given the witness plenty of time, it is not error for the court to say to counsel, in the presence of the jury, "Sometimes you don't;" such matters being within the discretion of the court.

2.  *Action for personal injuries; competency of evidence; expert testimony.*—In an action against a .railroad company by a passenger to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant, in which among other injuries, the plaintiff claimed to have suffered from a sprained ankle, where the plaintiff introduces a physician who had examined her and he tells of the plaintiff's condition as he found it, and said witness was cross-examined as to the plaintiff's ability to walk with a sprained ankle, it is not error for the plaintiff, on the re-direct examination of said witness, to ask his medical opinion upon a hypothesized question designed to support his theory or version of the facts connected with plaintiff's injury and her conduct during the day of the injury; it being shown that after the alleged injury she walked some distance.

3.  *Same; same.*—In such a case, where the evidence for the plaintiff tended to show that by reason of the injuries complained of, she was permanently injured and her health was greatly impaired, but it was claimed by the defendant that the condition of the plaintiff's health subsequent to the accident was substantially the same is it was prior thereto, and on the cross-examination by the defendant of the plaintiff as a witness, it was attempted to be shown that she had, for a long

28c

[Birmingham Railway & Electric Co. v. Ellard.]

time, been laboring under similar ailments to those which she claimed to be suffering from as the result of the accident complained of, it is not error for the court to allow the plaintiff to be recalled and examined touching the condition of her health prior to the injury.

4. *Same; same.*—In an action against a street railroad company by a passenger to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant while the plaintiff was attempting to board one of the defendant's cars, it is not competent to ask a witness being examined, whether or not he saw anything happen at the time of the accident that would have a tendency to hurt anybody; such question calling for the conclusions of the witness.

5. *Trial and its incidents; examination of witness as to violation of the rule.*—Where witnesses in a case has been put under the rule, and upon subsequent examination of one of the witnesses, her answers have a tendency to show that after having been so put under the rule, the witness violated the court's instructions by talking to some one about the case, it is not improper or erroneous for the court to permit such witness to be asked as to such alleged violation, and as to whether or not she understood the instructions of the court when she was put under the rule.

6. *Action for personal injuries; admissibility of evidence.*—In an action against a street railway company by a passenger to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, in which it was claimed by the plaintiff that by reason of the injuries complained of her health had been permanently injured and impaired, where, upon the examination of a witness for the defendant, said witness testified to facts tending to show that before the accident the plaintiff was a weak and delicate woman, it is permissible for the plaintiff, upon cross-examination of such witness, to prove by her facts which have a tendency to show that the plaintiff was not in bad health prior to the accident.

7. *Trial and its incidents; what not sufficient insistence in argument on appeal upon assignment of error.*—Where on appeal assignments of error are based upon rulings of the trial court upon questions propounded to witnesses, the insistence in argument and brief of counsel that "each question was improper and that the court erred in overruling defendant's objection thereto," is not such an insistence as will require the review of the

[Birmingham Railway & Electric Co. v. Ellard.]

questions sought to be presented by such assignments of error.

8. *Action for personal injuries; admissibility of evidence; expert testimony.*—In an action against a street railroad company by a passenger to recover damages for personal injuries, which are alleged to have permanently injured plaintiff and materially impaired her health, where it is claimed by the defendant that the plaintiff was suffering from hysteria augmented by the pendency of ner suit, and there was some evidence introduced by defendant tending to sustain the claim, if a physician introduced as a witness for the defendant testifies to the plaintiff's suffering from hysteria and gives his medical opinion as to the cause of hysteria, it is not incompetent for the plaintiff on the cross-examination of such witness, to ask him, "Is a patient any more responsible for a hysterical condition than for any other condition?"

9. *Same; same; same.*—In such a case, where the physician being examined as to the hysterical condition of the plaintiff, stated that he did not say that persons who pretended there is something the matter with them while their law suits are pending are necessarily hysterical, it is not improper or incompetent for the plaintiff to ask such witness, "Are they hysterical?"

10. *Expert witness; competency can not be inquired into.*—Where a physician has been examined as an expert in the trial of a case, the opinion of other physicians as to whether or not such witness was qualified to draw correct medical conclusions can not be introduced in evidence.

11. *Action for personal injuries; admissibility of testimony of physician.*—In an action against a street railroad company to recover damages for personal injuries alleged by plaintiff to have permanently disabled her and seriously impaired her health, where a physician introduced as a witness for the defendant testified that several years before the time of the alleged accident he attended the plaintiff, and that during those years the plaintiff made complaints about her physical condition and her suffering, and that on the day prior to his examination, he had again examined the plaintiff, at which time she made complaints of her sufferings, it is competent for the defendant to ask said witness whether or not the complaints made by the plaintiff, when he examined her the day before he was testifying, were the same complaints she made during the time he treated her prior to the alleged accident; such qustion calling for statements of a matter of fact and not the conclusions of the witness.

[Birmingham Railway & Electric Co. v. Ellard.]

12. *Same; admissibility of evidence.*—In an action against a street railroad company by a passenger to recover damages for personal injuries alleged to have been 'caused to plaintiff while attempting to board a car by said car, after it was stopped, starting too quickly and with a jerk, the speed with which the car approached the station where the plaintiff attempted to board the car is immaterial, irrelevant and incompetent evidence.

13. *Same; same.*—In such an action, where a witness examined for the defendant testified that he was acting as motorman at the time of the alleged injury, and that he moved or started the car at the time plaintiff is alleged to have been injured, and then testifies as to how he started the car, and how much current he turned on for that purpose, it is competent for the plaintiff, on the cross-examination of said witness, to ask him, "How do you usually start your cars off from the station?" or other similar questions for the purpose of showing what was usually done by defendant's motormen in starting cars from the station.

14. *Evidence; examination of witness as to character of other witness.*—The general character of a witness in the community in which he lived can not be proved, unless such witness' general character has been attacked; and the fact that during the cross-examination of a witness he was asked whether or not he had served a term in the penitentiary or had ever been convicted, does not constitute an attack upon the witness' character, so as to authorize the subsequent proving of his general character by another witness.

15. *Charge of court to jury.*—It is not error for the court in the course of its general charge to the jury to instruct them that they were not "to be governed by the number of witnesses, but by the weight and proponderance of the evidence;" and upon counsel for the defendant in such case insisting that the word "necessarily" should be incorporated in said instruction just before the words "to be governed," it furnishes no ground of complaint to the defendant, if the court, after stating that he did not believe that it was necessary to add the words suggested, still to please counsel he would do so, and thereupon instructed the jury that they were "not necessarily to be governed by the number of witnesses, but by the weight and preponderance of the evidence."

16. *Action for personal injuries; charge of court to jury.*—In an action against a street railroad company by a passenger to

[Birmingham Railway & Electric Co. v. Ellard.]

recover damages alleged to have ben sustained by the plaintiff while attempting to board a car, and there was testimony tending to show that the injuries complained of were caused by the sudden starting of the car with a jerk, and it was averred in the complaint and some of the witnesses testified that the plaintiff was first thrown one way by reason of the jerk and then the other way, a charge is erroneous and properly refused which instructs the jury "If you believe from the evidence that by the starting of car the plaintiff was not jerked, slung or thrown one way, and by the stopping of the car the plaintiff was not jerked, slung or thrown the other way, your verdict must be for the defendant."

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, Mrs. Margaret A. Ellard, against the appellant, to recover damages for personal injuries, alleged to have been sustained by her while she was atempting to get on defendant's car as a passenger to be transported from East Lake, a suburb of Birmingham, to Birmingham; the plaintiff claiming ten thousand dollars.

The complaint contains four counts. In the first count the plaintiff avers as the negligence complained of, that while attempting to get on the car, she was thrown around from the position in which she was, and to keep from falling to the ground she held on to an arm of the said car, and the sudden lurch given by said car, inflicted the injuries complained of. In this count there is also a general averment that said injuries were caused by the negligence of defendant's employees in charge of said car, in the management and running thereof. The second count avers the negligence to be in the conductor in having said car started before the plaintiff had time to get into or upon said car. The third count avers the negligence of the defendant's motorman in causing said car to start before the plaintiff had time to enter into or upon said car. And the fourth count avers that the injuries complained of were caused by the negligence of the motorman in causing the car to start suddenly, before the plaintiff had time to enter into or upon said car.

Defendant pleaded the general issue and by special plea set up that the plaintiff herself was guilty of negligence in the negligent manner in which she attempted to get on the car, which negligence on her part proximately contributed to her injury.

Upon the trial of said cause a large number of witnesses were examined both upon the question of the manner in which the injury was received and as to the extent of the injuries so received. Upon both of these propositions the evidence is in conflict; the testimony of the witnesses for the plaintiff tending to show negligence on the part of the conductor or motorman in starting the car, while the plaintiff was attempting to get thereon, and, further, that her injuries were serious and permanent; while the testimony introduced on behalf of the defendant tended to show that there was no negligence in the manner in which the car was started, and that the injuries received by the plaintiff were very slight.

The evidence introduced showed that the alleged injuries were caused while the plaintiff was attempting to board at East Lake an electric car operated by the defendant on its road from East Lake to the city of Birmingham; that the car was what is ordinarily known as an open car with a running board on either side with seats running crosswise from one side of the car to the other.

The plaintiff's testimony tended to show that as she attempted to board the car and after she had placed one foot on the running board and had grasped the arm of the seat or handle attached to the side of the car for the purpose of assisting passengers to board it, and while her husband was holding her arm assisting her, the car suddenly started with a jerk, throwing her forward, and upon some one hallowing to the motorman, the car, after going a few steps, was suddenly stopped, and jerked her backwards; that during this time she had hold of the arm of the seat or handle above referred to, and her arm and side hit the side of the car or a part of the seat and it was by reason of the jerks and blows received by

her she sustained the injuries complained of. It was further shown by the evidence that she at once entered the car as a passenger and continued her trip to Birmingham, a distance of five or six miles; that upon reaching Birmingham she got off of the car and walked to the house of her daughter, which was several blocks from where she alighted from the car; that she remained at her daughter's house until the afternoon of the same day, and then walked back several blocks and boarded a car on the same line of the defendant and went to East Lake.

The evidence for the plaintiff tended to show that while at her daughter's house she complained a great deal from the injuries which she had sustained by reason of the jerks and wrenches caused by the sudden starting of the car; that one of her ankles was severely wrenched or sprained, and gave her a great deal of pain during the day, and that her ankle and side were rubbed with liniment during the day she spent at her daughter's house after the accident. There was other evidence introduced on the part of the plaintiff tending to show that the injuries caused by the sudden start of the car had permanently injured the plaintiff's health, had affected her nervous system, and that since the time of the accident, she was unable to walk without crutches, or to do her regular duties. It was further shown by the evidence that at the time of the accident one H. L. Brown, who was the conductor on the said car was acting as motorman and operating said car as motorman at the time of the accident or at the time the plaintiff sustained the injuries.

The evidence for the defendant tended to show that the plaintiff had been in poor and delicate health for several years prior to the alleged accident, and that the results of the alleged injury were slight and were not permanent in character, and that the plaitiff was hysterical. There were physicians introduced as witnesses for the defendant, who testified that they had made an examination of the plaintiff or had treated her, and that there were no symptoms of any disease or injury result-

ing from the accident; that the plaintiff's symptoms were purely subjective, that is, such as were complained of, and that an examination showed no evidence of any injury which could be accounted for by the alleged accident.

The witnesses in the case were put, by the court, under the rule. Mrs. Fannie Reese was examined as a witness for the defendant. During her cross-examination by the plaintiff she testified that during the day upon which she was examined she had talked to some of the witnesses or other people about the case. Thereupon the plaintiff's counsel asked her the following question: "You understood when you were put under the rule that you were not to talk about it [the case], didn't you?" The defendant objected to this question on the ground that it called for immaterial and irrelevant evidence, and upon the ground that the question was a proper inquiry for the court and not for the counsel of the plaintiff to make. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that she did, she was then asked the following question: "And still you talked to her [the person referred to by the witness] about it?" The defendant objected to this question upon the same ground, and duly excepted to the court's overruling its objection. The witness answered that she did. Thereupon the plaintiff asked the witness as to her having talked to other persons about the case after she was put under the rule. To each of these questions the defendant separately objected upon the same grounds as stated above, and separately excepted to the court's overruling each of said objections. These rulings of the court constitutes the bases of the tenth, eleventh, twelfth and thirteenth assignments of error. The other facts of the case necessary to an understanding of the decision of the court upon the present appeal are sufficiently stated in the opinion.

The bill of exceptions contains the following recitals as to the exceptions reserved by the defendant to a portion of the general charge of the court to the jury, which was given in writing: "The defendant having requested

[Birmingham Railway & Electric Co. v. Ellard.]

the court in writing to give its charge to the jury in writing, the court, among other things, said to the jury: 'You are not to be governed by the number of witnesses, but by the weight and preponderance of the evidence.' Defendant's counsel excepted to that part of the court's charge in writing given to the jury as follows: 'You are not to be governed by the number of witnesses, but by the weight and preponderance of the evidence.' Thereupon plaintiff's counsel, in the presence and hearing of the jury, said to the court: 'I suggest you say "necessarily."' The court thereupon, in the presence and hearing of the jury, said: 'I am willing to stand on it either way.' Defendant's counsel thereupon, in the presence and hearing of the jury, said to the court: 'If you will put in "necessarily" I will withdraw the objection.' The court thereupon, in the presence and hearing of the jury, addressing defendant's counsel, said: 'It is not necessary, but I will put it in to oblige you,' and the court did then and there put the word 'necessarily' in the written charge at the proper place. Defendant's counsel thereupon, in the presence and hearing of the jury, said to the court: 'I except to the remark of the court, that it is not necessary.' The court then said to the jury: 'You are not necessarily to be governed by the number of witnesses, but by the weight and preponderance of the evidence.' "

The defendant requested the court to give to the jury the following written charge, and duly excepted to the court's refusal to give the same as asked: (1.) "If you believe from the evidence that by the starting of the car the plaintiff was not jerked, slung or thrown one way, and by the stopping of the car the plaintiff was not jerked, slung or thrown the other way, your verdict must be for the defendant."

There were verdict and judgment for the plaintiff, assessing her damages at $6,000. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER, TILLMAN, CAMPBELL & PORTER, for appellant. *Lewis v. State*, 35 Ala. 386; 1 Greenleaf on Evidence,

p. 604; *Holly v. State*, 105 Ala. 100; *Hadjo v. Gooden,* 13 Ala. 718; *Towns v. State*, 111 Ala. 1; *State v. Cherry*, 63 N. C. 493; *Railway Company v. Raney*, 23 S. W. Rep. 340; *Meriman v. Railway Company*, 20 Conn. 554; *Garrett's case*, Bus. 359.

FRANK S. WHITE, *contra.*

HARALSON, J.—1. The first assignment of error insisted on, is the 3rd. The plaintiff was examined in her own behalf. She stated on the cross that Dr. Finch had been coming to see her, and said: "He came to see me more than once, when I had the colic." Defendant asked: "He never came but one time, and that was when you had the colic?" She replied: "You are trying to cross me, so I will tell you something that is not so. If you will give me time—If I tell you a story,"—Defendant said: "Go ahead, you can have as much time as you want." The court said: "Give her time to answer it." Defendant's counsel replied to that remark of the court: "I have given her plenty of time." The court replied: Sometimes you don't,"· to which defendant excepted. There was no error here. The court appears to have thought defendant's counsel was hurrying the witness for her answers, and simply said: "Give her time to answer," and stated to counsel, who said he had given her plenty of time, that "sometimes you don't." There was no possible harm to defendant in the remark of the court, and even if counsel, as a matter of fact, had given her plenty of time to answer, the court did not think so, and we will not presume it·error in the discretion it used, to require what it thought was sufficient time for witness to answer. It was the duty of the court to see that an orderly examination was conducted, and that the witness was not unduly hastened, which, so far as appears, was all the court attempted or intended to do.

2. The witness, Dr. John Davis, examined for plaintiff, gave her condition as he found it on examination. He had been asked on the cross as to her ability to .walk,

with a strained or sprained ankle, back or side, or anything of the sort. The hypothetical question propounded by defendant was designed to support its theory or version of the facts connected with plaintiff's injury, and her conduct during the day of the injury. To meet this, the plaintiff's counsel, on the re-direct examination, inquired: "Suppose the lady did commence suffering within a very short time after she sat down on the car, and when she got to 21st street and Second avenue, she got off and was suffering then, and limped and hobbled along to 10th street, stopping frequently on the road to rest,—several times on the road to rest,—might not that have occurred and still she have been hurt? Couldn't she still have received the injury she complains of now, and done that?" The defendant objected "that it is a conclusion from the facts stated [which was called for] that the jury should draw and not the witness as an expert." The court stated to plaintiff's counsel: "You can ask his [the witness'] medical opinion," and witness replied, "Yes, sir." The object of defendant in the cross of the witness was to elicit from him the answer that if she had been injured as claimed, she could not afterwards have gotten off at 21st street in Birmingham and walked to 10th street in the manner it was claimed she did. There was no objection to the question of the plaintiff, that it hypothesized the facts incorrectly, but the only ground was that it was a conclusion, which the witness was not competent to give. He was a medical expert, and, asked in the connection it was,—that the defendant on the cross had elicited from him testimony tending to show that she could not have received the injury, if the hypothetical case put to him by the defendant was true,—the question and answer were not improper. The object in asking it was to meet a hypothetical theory of defense being insisted on by defendant.

The succeeding questions propounded to the witness constituting the basis for the 6th and 7th assignments of error, were for the same reasons already stated, as to the foregoing question and answer, not improper to be asked and answered.

3. The 8th assignment of error is that the court al-

lowed plaintiff's counsel to recall and examine her, touching the condition of her health, before the injury. The defendant on the cross-examination of plaintiff, as appears from her answers, attempted to show that she had for a long time been laboring under serious similar ailments to those she now claimed she was suffering from.  She stated that her physician, before that, at some time not specified, had given her medicine for the colic, and she did not remember that he treated her for pain in the side and back and for heart trouble, but that there was, at one time, a little knot in her breast, for which he gave her something.  Her husband, A. J. Ellard, had been also interrogated as to her former health, and he stated that his wife complained of her side, fifteen or twenty years ago, and did not know that she complained of trouble with her heart; that she complained of her stomach at that time; that he did not know that she complained of head, side and back aches, and did not know that she had a cake on her side, but reckoned she did have one several years ago, and did not know when she last had the cake in her side, but did have one several years ago. Examined on her recall, plaintiff stated if she ever had a lump in her side she did not know it; that "twenty-three years ago, a little place came right here on me. I don't know what it was." She did not specify the place on her person called "a little place." She said it was not very hard, but was purple and soon went away. She was asked by her counsel: "Had you been having chills before that?" Defendant objected, on the ground that the examination was not in rebuttal, and stated that he never went into anything twenty-three years old. The court replied to counsel: "I understood you, Mr. ———[to inquire], whether before this thing happened,—[these things were the matter with her]. Your inquiry continued at quite a length on the subject of her physical condition and her side." Counsel replied, "I understood that, but not that long ago;" and said: "The question is, will the court allow it," and the court replied to counsel: "You can take an exception on that." The witness replied, she had no recollection of having a

[Birmingham Railway & Electric Co. v. Ellard.]

lump or cake. in her side. Counsel for plaintiff then asked whether or not she had been having chills at that time, and she replied that she had been having chills before that. The defendant objected, that the question called for evidence wholly illegal, irrelevant and incompetent. In view of the effort by defendant to show that plaintiff had been laboring under physical disabilities before her injury for a long and indefinite period of time, we are not impressed that the question was improper, as its tendency was to show that her ailments since the injury were not attributable to any disease she had before that time.

4. The 9th assignment was that the court refused to allow the witness for defendant, H. C. Miller, who was on the car at the alleged time of the injury, to answer the question: "Did you see anything happen there that would have a tendency to hurt anybody?" It was objected that the question was leading, and called for a conclusion of the witness. It was subject to the latter objection. The witness should not have been asked his opinion as to the tendency of things he saw, but for the facts, and it was for the jury, from these facts, to determine if he saw anything happen, having a tendency to injure anyone. The court said, in its ruling, that counsel might ask for anything and everything that happened, and to let the jury say what the tendency was. He had stated fully all he saw as to the accident, and the defendant got, as appears, the full benefit of all he knew or saw.

5. There was no objection to allowing questions asked the defendant's witness, Fannie Reese, constituting assignments of error 10, 11, 12 and 13. The answers had a tendency to show that after having been put under the rule by the court, the witness violated its instructions not to talk to anyone about the case. She was not excluded as a witness on this account; but the questions were allowed and were not improper to go, even, to the jury, as calling for evidence tending to show the witness' interest and bias in the case. Their object, again, may have been to lay a predicate to move to exclude the witness altogether, and it was competent for the court to

allow them for that purpose. If defendant did not desire the jury to hear them, he might have moved for the retirement of the jury during the examination.

6.   At the time Mrs. Reese was being examined, plaintiff's counsel on the cross asked her: "Didn't Mrs. Ellard sit up at your house at night, when your baby died? * *
*   I mean at the time you talked about her being weak and delicate?   I mean during that time you say she was weakly and delicate, and when you lived near her, didn't she go and sit up with you, at the time your baby died?"   The objection to the question was for illegality and immateriality of the evidence called for.   The court ruled that it was allowable, solely for the purpose of showing she was not in bad health.

The witness, on direct examination by defendant, had testified to facts tending to show that before the accident plaintiff was a weak and delicate woman, and this, with the evident view, that her present condition was not attributable to her alleged injury.   For the purpose for which it was allowed, the question and answer were proper.

7.   The 15th, 16th and 17th assignments are scarcely insisted on in argument. The insistence is: "We submit that each question was improper, and that the court erred in overruling defendant's objections thereto." This was no more than a substantial repetition of the assignments of error themselves.

8.   Dr. Wilson, examined for defendant, was asked by plaintiff on the cross:   "Well, is a patient any more responsible for a hysterical condition than for any other condition?"   He had testified in chief, giving his opinion as to hysteria and its causes, and stated that plaintiff had the appearance of a hysterical person; that such patients are honest in the belief that they have the trouble they complain of; that a hysterical condition may come without any cause at all; that patients will sometimes have hysteria continuously, and become hysterical after an injury or shock, or any sudden or serious trouble; that such patients may have total inability to use the limbs in any way; that it was taught that people who have law-

suits pending, and who are claiming to have been injured by accidents and claiming money for them, imagine they were hurt, etc., etc. He was asked on the cross the question above stated. The question was competent on the cross-examination, to test the knowledge of the expert as to hysteria, under which, according to the contention of defendant, plaintiff was laboring.

9. Dr. Wilson further stated that he did not say that persons who pretend that there is something the matter with them while their law-suits are pending, are necessarily hysterical. Plaintiff asked: "Are they hysterical?" Defendant objected to the question on the ground that it was immaterial, and as being a matter of common knowledge. The witness answered, "Not necessarily." The objection was properly overruled on both grounds. It did not call for a matter of common knowledge, and the plaintiff was entitled to the opinion of the expert, touching matters he had been examined about in chief by defendant.

10. Dr. Barrett had been examined in behalf of plaintiff, and some of the tendencies of his evidence were favorable to her, and the same is true of Dr. John Davis. Dr. Wilson testified that he knew each of them. As to Dr. Barrett he was asked on the cross: "Is he a skilled physician? How does he stand?" The court overruled an objection to the question, for that it was immaterial and improper.

The reputation and standing of these physicians had in no way been questioned, except that Dr. Wilson, perhaps, had expressed opinions somewhat at variance with theirs. The rule seems to be settled with us that whether a witness who is a physician, in a case like this, has a reputation for skill or the want of it, is no part of the issue, unless the capacity of the witness, in his profession, is impeached (DePhue v. State, 44 Ala. 32). Or, to state it otherwise, that after a witness has been admitted to testify as an expert, the opinions of other experts in the same science, that the witness was qualified to draw correct conclusions in the science on which he was examined, cannot be given in evidence to the jury.—Tillis v. Kidd, 12 Ala. 648. The court say in

the case last referred to, as to the admission of such evidence: "This was evidently invading the province of the jury, whose particular duty it was to determine on the weight, the testimony of the witness was entitled to. Such testimony would have been properly adduced to the court, to establish the competency of the witness, but after he was admitted to testify, the jury were the exclusive judges of the credit he was entitled to." Rogers on Ex. Testimony, §§ 17, 37. If evidence of other witnesses. be allowed to sustain the reputation of the expert, it would seem necessarily to follow, that counter evidence might be adduced by the party against whom the evidence was allowed, and new side issues thereby injected into the case.

11. Dr. Finch, examined for defendant, testified, that he attended plaintiff in 1893-1894, and stated her condition and the complaints she made at that time; that she suffered with several troubles and he treated her for stomach troubles, and she complained of her head, back, hips and side, and at times of her heart, and often of a difficulty of breathing, and made these complaints, more or less, for about four years,—from 1887 to 1893; that she had hysteria in those years he attended her; that he was present the day before, and examined her some, but not extensively; that Doctors Davis and Wilson were also present, and she made the same complaints, except that she exaggerated them some; that yesterday morning she complained of her side, back and arm. Counsel for defendant asked him: "Well, were they or not the same complaints she made during the time you treated her four or five years ago?" The objection to the question, which was sustained, was that it called for a conclusion of the witness. Whether or not she made the same complaints the day before, that she made years before, when the doctor attended her, was a matter of fact, to which the witness, if he knew it, like any other witness, was competent to testify, without reference to his being an expert, and his opinion was not called for as the objection to the question stated. The purpose of the ev-

idence was that the subjective symptoms,—those manifested from complaints,—did not sustain her claim in respect to the seriousness of her injuries. It should have been allowed.

12.  H. L. Brown for defendant testified that he was the conductor on the car at the time of the alleged injury, and deposed to the facts of the stopping of the car and the getting on of the passengers, including the plaintiff.  Fifth street was the place where plaintiff got on, and the *gravamen* of her complaint is that the car, after it was stopped, started too quickly and with a jerk or lurch, which caused her injuries. There is no dispute but that the car stopped, indeed, it is so averred in the complaint.  She made, and could make, no complaint of the speed of the car as it approached that station, and the speed with which it did approach was wholly immaterial to the issues.  The question, therefore, by plaintiff on the cross, "Yes, as you approached Fifth street station, how fast were you going?" which was allowed by the court against an objection of immateriality, irrelevancy and illegality, was improperly allowed.

13.  This witness testified that he moved or started the car after it was stopped by releasing the brake and applying the current, one point; that it moved gradually and slowly, with no jerk at all in its moving; that he could not apply any less than one point and move the car, as one point was as little current as you can give.  The witness was asked by plaintiff on the cross: "How do you usually start your cars off from the station?" The witness had stated how he started it,—gradually and slowly and with but one current on, which was as little as he could apply to move the car.  It may be, that by asking the question, counsel's design was to show by the witness that he was mistaken when he said he applied only one current to move the car, and by asking the question, the witness might discover his mistake, and say that usually he applied less than one point.  But, whatever his object may have been, he had the right on the cross to ask about matters already

29c

stated by the witness, and to call for a repetition of his evidence on a given point. We discover no reversible error in this ruling of the court. What is here said disposes of the 30th assignment, in overruling an objection on the same ground to the question: "What do you usually do [in starting from a station]?" and to the other like questions made the basis of the 31st and 32d assignments.

14. Defendant examined one Dobson Reese, whose testimony was favorable to it. The plaintiff's counsel asked on cross-examination: "Mr. Reese, you have served a term in the penitentiary, haven't you?" He answered, "I have not." He was asked again: "Ever been convicted?" He replied: "No, sir." Defendant's counsel addressed plaintiff's counsel: "Of course you know that is not the way to prove it." Defendant's counsel afterwards put a witness on the stand and proposed to prove by him that he had known Mr. Reese for about 25 years, and that his general character in the community in which he lived was good. Plaintiff's counsel objected on the ground that the witness' general character had not been attacked, and the court sustained the objection. The ruling was proper.

15. The ruling of the court in allowing the witness for plaintiff, Bourgeois, to be examined for an alleged violation of the instructions of the court, after she had been put under the rule, was a matter within the discretion of the court, which we will not review.

16. There was no reversible error in the part of the general charge of the court excepted to. The court amended the charge to meet the objection raised by defendant to it. The counsel said, if you will put in the word "necessarily," I will withdraw the objection. The court, stating that he did not believe it was necessary, added that he would put it in to oblige counsel, and instructed the jury that they were not necessarily to be governed by the number of witnesses, but by the weight and preponderance of the evidence. Whether it was a proper charge as amended is not presented for review.

17. Charge No. 1 asked by defendant and refused,

when applied to the whole complaint was an improper one. The jury might have found for the plaintiff on less than is therein hypothesized.

For the errors indicated, the judgment must be reversed and the cause remanded.

Reversed and remanded.