# Bridges v. The State.

*Indictment for Murder.*

1   *Organization of jury; examination voir dire.*—Under the provisions of the statute (Code, § 4332), that the fact as to whether a juror "had any interest in the conviction or acquittal of the defendant or had made any promise, or given any assurance that he would acquit or convict the defendant," is one of the two causes for challenge not required to be proved by the oath of the party summoned as a juror, but may be established by other testimony alone, it is not error for the court to fail to examine the proposed juror on his *voir dire* as to his interest, or whether he had given any such assurance.

2.   *Homicide; conspiracy; charge to jury.*—Where, on a trial under an indictment for murder, the testimony tends to show that the defendant and others had conspired together, and had armed themselves, to prevent an arrest or to avenge a wrong, and in furtherance of such unlawful confederation they had assembled at a house, and that while deceased was peaceably approaching the house where the conspirators were gathered, he was fired upon by those within and killed, charges to the jury, which ignore the evidence tending to prove conspiracy to do an unlawful act, and limit defendant's guilt to the question whether he fired the fatal shot, are erroneous and properly refused.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The appellant was indicted and tried for the murder of Arthur T. Woods, and was convicted of murder in the

first decree, and sentenced to the penitentiary for life.

The bill of exceptions recites that "After the jury had been selected and sworn and after one witness had been examined, defendant's attorney in open court stated in open court that he wished to reserve an exception to the failure of the court to ask each juror on his *voir dire* the sixth cause of challenge under section 4331 of the Code : 'If he had any interest in the conviction or acquittal of defendant, or had made any promise or had given any assurance that he would convict or acquit the defendant.' The court had not asked any one of the persons this question."

The tendencies of the testimony for the State is sufficiently shown in the opinion. The testimony for the defendant tended to show that at the time the deceased was shot, he, the defendant, was at his own house, one hundred yards from the place where the shooting occurred, and remained there until the shooting was over, and took no part in said shooting.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked : (1.) "If the jury believe that Jim Bridges did not shoot Arthur T. Woods, then they must find him not guilty." (2.) "The court charges the jury that if they believe all the evidence in this case, then they must find the defendant not guilty." (3.) "If the jury do not believe from the evidence that Jim Bridges killed Arthur T. Woods with malice aforethought, then they must find him not guilty as charged in the indictment, but must find him guilty in a less degree, if guilty at all." (5.) "The court charges the jury that in order to find the defendant guilty of murder in this case, they must believe from all the evidence that defendant not only shot and killed Arthur T. Woods, but also that he did so with malice aforethought" (6.) "The court charges the jury that if they believe the testimony of the witnesses that swore that Jim Bridges was at his house at the time that Arthur T. Woods was killed, then you will find him not guilty."

No counsel marked as appearing for appellant.

[Bridges v. The State.]

WILLIAM C. FITTS, Attorney-General, for the State. The objection to the organization of the jury was not timely or properly made ; and even if it had been, it was without merit—Criminal Code, § 4332.

Charges 1, 3, 5 and 6 were properly refused, because each ignored the proof tending to show the conspiracy. *Jolly v. State*, 94 Ala. 19 ; *Martin v. State*, 89 Ala. 115 ; *Turner v. State*, 97 Ala. 57 ; *Tanner v. State*, 92 Ala. 1 ; *Williams v. State*, 81 Ala. 1. Charge number 4 would have been a direct invasion of the province of the jury, and for that reason was rightly refused.

HARALSON, J.—1. There was no error, if an exception had been properly raised, which was not done in this instance, in the fact that the court did not ask each juror examined on his *voir dire*, "if he had any interest in the conviction or acquittal of the defendant, or had made any promise, or given any assurance that he would acquit or convict the defendant." This is one of the two causes for challenge not required to be proved by the oath of the party summoned as a juror, but which may be established "by other testimony only."—Code, § 4332. But if the exception had been properly raised, the defendant does not appear to have proposed proof of the disqualification of any juror, at any time, but it does appear, that each juror was selected and sworn, before the question now suggested was raised, even, after which, it was not competent, from anything appearing, to raise it.—*Battle v. The State*, 54 Ala. 93 ; *Rash v. The State*, 61 Ala. 90 ; *Roberts v. The State*, 68 Ala. 515 ; *Henry v. The State*, 77 Ala. 75.

2. The evidence in the cause tends to show that defendant killed deceased. It also tends to show, that whether he did or not, he and ten or a dozen other persons had armed themselves with pistols and Winchester rifles, in the evident contemplation of the arrest of a party by the name of Charles Jenkins, who, the day before, had been engaged in a personal difficulty with another party by the name of Harris, and whose arrest they would prevent; or, else, that they had thus armed themselves to avenge the wrong which they supposed had been done to the said Jenkins, at whose house, after arming themselves, they had assembled. When deceased in company with two others approached near this

house, on a peaceable mission, so far as appears, and with no hostile demonstrations, they were ordered by the armed party there assembled, not to come any further. Deceased and his party replied: "What do you mean, we are not after any trouble!" and were, without more, fired upon by their assailants, resulting in the immediate death of deceased. The proof showed that deceased had gone to said house, at the instance of its owner, to notify said Charles Jenkins and his brothers, who were its occupants, to vacate the house the next day. Whether the purpose of defendant and those who acted with him, was, in thus arming themselves, to prevent the arrest of said Jenkins or to take vengeance into their own hands, on account of the supposed wrong Jenkins had the day before received at the hands of said Harris, all who entered into such a confederation were conspirators to do an unlawful act, and each was responsible for everything that was done by any of his confederates in execution of the common purpose growing out of it, as one of its natural consequences, even though it was not intended or within the contemplation of the parties as a part of the original design.—*Evans v. The State*, 19 So. Rep. 538; *Jolly v. The State*, 94 Ala. 19; *Martin v. The State*, 89 Ala. 115; *Gibson v. The State, Ib.* 122. The very fact that they armed themselves and fired upon deceased and his two companions, who do not appear to have had any connection with the difficulty between said Harris and Jenkins, who were approaching peaceably and who gave notice that they were not coming for the purpose of causing trouble, indicates their unlawful conspiracy to do violence.

Charges 1, 2, 5 and 6 requested by defendant and refused, ignore the question of a conspiracy to do an unlawful act, and were properly refused.

The vices of the other charges are so glaring we need not consider them.

Affirmed.