# Braham *v.* The State.

*Indictment for Murder.*

1. *Jury; voir dire; motion to quash panel.*—On a trial for murder, none of the jurors were examined by the Court on the *voir dire* as to their relationship to the defendant, or to the deceased, and the panel was accepted, without any objection that they had not been so examined. After the jury was empanelled, the defendant moved to quash the panel on the ground that such examination had not been made. Thereupon, the Court offered to examine the jury and each member thereof as to relationship, but the defendant objected thereto. No evidence was introduced to show such relationship. *Held* that the motion to quash the panel was properly overruled.

2. *Confession; insanity.*—A statement made by a prisoner about an hour after the commission of the alleged crime, which on its face is *prima facie* voluntary, is admissible in evidence, both as a confession, and, under a plea of insanity, to show the condition of the defendant's mind.

[Braham v. The State.]

3. *Witness; conflict of testimony.*—It is the province of the jury to determine whether or not a witness is mistaken in his evidence, where the evidence of such witness is shown to be in conflict with that of another, and it is not permissible to ask one witness if another witness was not mistaken in his evidence.

4. *Witness; rule.*—When witnesses have been placed under the rule, it rests in the sound discretion of the Court to allow one, who did not retire from the court room, to be examined. Especially, where such witness was exempted from the rule by the Court.

5. *Insanity; evidence; declaration.*—Although the fact that a brotner of the accused was insane is admissible in evidence under a plea of insanity, such fact cannot be shown by the mere declaration of the defendant to that effect.

6. *Evidence; collective facts.*—Where a question calls for a "Short hand" rendering of facts, but is so general that irrelevant evidence would have been responsive to it, the question is properly excluded.

7. *Evidence; opinion of non-experts.*—A non-expert witness, before he may be allowed to give his opinion of the existence of an unsound condition of mind, must be shown to have had the opportunity to form a judgment, and this would depend upon the familiarity of the witness with the person whose sanity is in question, the character of the disqualification, the nature and number of the extraordinary circumstances detailed, and their proximity to the act involved in point of time.

8. *Same; same.*—The question as to the competency of a witness to express an opinion as to the insane condition of a person's mind is a question for the Court, and not for the jury; and the Court's decision on the question will not be revised, unless it is clearly made to appear to have been erroneous.

9. *Evidence; to what witness may not testify.*—A witness cannot testify as to the cognition of another person.

10. *Evidence; experts; province of Court and jury.*—While the Court pronounces on the competency of witnesses as experts, it is the province of the jury to measure the weight of their opinions, and, in order that the jury may have a proper appreciation of the value of such opinions, it is competent to develcp on cross examination the extent and accuracy of the expert's knowledge of the particular subject upon which he has been called to testify as an expert.

11. *Evidence; general objections to.*—A general objection to evidence cannot be sustained, unless the evidence is manifestly

[Braham v. The State.]

illegal, irrelevant, and apparently incapable of being rendered admissible in connection with other evidence. If a party objecting to evidence will not particularize, the Court is not bound to cast about for grounds, upon which in the mind of counsel they are rested, but may properly disregard them.

12. *Evidence; sanity; competency of witness.*—The rule with reference to the competency of witnesses called to testify to the sanity of a person is not so exacting as it is with reference to those called to show insanity.

13. *Evidence; examination of witness.*—There is no error in refusing to allow a question to a witness which has already been fully answered by such witness.

14. *Evidence; rebuttal; discretion of Court.*—Where a witness is examined in rebuttal, it is in the discretion of the Court to allow a question, which, though not in rebuttal, calls for evidence otherwise admissible. And the exercise of this discretion will not be reviewed.

15. *Objections to evidence; error without injury.*—Where the answers to questions are favorable to the party objecting, the Court will not consider the question of error, since, if there was error, it was error without injury.

16. *Evidence; experts; questions to.*—Where a witness introduced as an expert testifies that he is, and has been for several years, a practicing physician, had treated the the defendant several times, and had talked with him often, a dozen times he supposed, and, from his acquaintance with, and observation of defendant, and from his professional knowledge, he was of opinion that the defendant was sane, it is not error to refuse to allow a question to the witness asking if he was an expert on insanity, as the question seeks to substitute the opinion of the witness as to his competency, for the opinion of the Court on that question.

17. *Charge of Court.*—A written charge requested is properly refused, which singles out a part of the evidence, or which is argumentative.

18. *Charge of Court; insanity, definition.*—There is no error in a charge of Court defining insanity as "A mental disease; it does not mean eccentricity or peculiar action of the brain, it means a departure caused by a disease of the brain. Mere temporary mania does not constitute insanity."

19. *Charge of Court; cautionary remarks.*—Cautionary remarks made by the Court in its general charge to the jury, which do not present one side of the case more prominently than the other, are unobjectionable.

[Braham v. The State.]

APPEAL from the Criminal Court of Jefferson county. Tried before Hon. SAMUEL E. GREENE.

The appellant herein, Bud Braham, was tried for the murder of Minnie Crenshaw, convicted of murder in the first degree, and sentenced to be hanged. He was tried on plea of not guilty, and not guilty by reason of insanity.

In selecting the jury, each juror was examined on his *voir dire,* but the court neglected on such examination to inquire as to any relationship of the juror to the defendant or to the deceased. Each juror on the panel was accepted by the solicitor and by the defendant. After the jury was empaneled, the defendant for the first time made objection to the failure of the court to make such examination, filing a motion to quash the panel on that ground. The court then of its own motion, and against the objection of the defendant, examined, as a witness, one Jake Jones, showing by such witness that both the defendant and the deceased were negroes. The court also then offered to question the jury singly and as a whole as to such relationship, but the defendant objected thereto, and thereupon his motion to quash the panel was overruled.

Thereupon the State introduced evidence showing that, shortly before the killing, the deceased and defendant were walking together, talking in an amicable manner; that defendant called the attention of the deceased to a passing railroad train, and as she turned her head to observe it, he shot her in the back of the head with a pistol. That, on her falling, the defendant fired three other shots into her body, which caused her death.

One of the witnesses for the State, Mrs. C. S. LeCrane, testified that the killing was in an open common. This witness was asked by the defense whether she thought the defendant and deceased were white or colored people when they passed her. Objection to the question by the State was sustained.

Another witness, Bart George, against objections of defendant, testified that he saw the defendant in the jail, about an hour after the killing. That no one made any threats, promises or inducements to defendant while

witness was there.   The defendant there said that he killed the deceased because he loved her; he said that he had made up his mind if she d'd not marry him, he would kill her, and that he killed her because he loved her.  He said that when he walked out, he gave her the gun, and asked her to shoot him, but that she would not do it, and he then shot her.  He asked an officer to see that she was buried nicely, and said that he had thirty-five dollars belonging to her, which he wanted turned over to her people.   He stated that he and deceased were in Birmingham the day before, and he would have killed her then, if he had had a pistol.   On cross-examination, this witness testified that, when he saw defendant in jail, he was talking, and laughing and crying at the same time.   He said he did not wish to put the State to expense, and if they would appoint a day he would come back and be hung.   The place where the killing occurred was not in an open, but in a pine thicket.

Jake Jones was called as a witness for the State, and defendant objected to his examination on the ground that witnesses in the case had been placed under the rule, but, notwithstanding this, the said Jake Jones had remained in the court room during the examination of previous witness.   It appeared that, at the request of the solicitor, the court had suspended the rule so far as this witness was concerned.   The objection of the defendant was overruled, and the witness allowed to testify.   Other matters on examination of this witness sufficiently appear in the opinion.   On examination of Douglass Crenshaw, the State produced a pocket-book, found in possession of the defendant when he was arrested, and the witness was asked if he knew whose pocket-book it was.   He said he did.   Being asked to whom it belonged, he answered that it belonged to Minn'e Crenshaw, the deceased.   The defendant excepted separately and severally to the questions, and moved separately to exclude the answers.   His exceptions and motions were overruled, and on this action of the court, assignments of error numbered 12 and 13 were based.

The testimony of E. R. Norman, for the State, is sufficiently shown in the opinion.

[Braham v. The State.]

On examination of Ophelia Holdness, mother of defendant, and a witness for him, she was asked by the defense to state whether the defendant came to see his brother because such brother had lost his mind. The State objected to the question, and the objection was sustained.

Dr. Haigler was examined as an expert witness for the defense. On his examination, the defense asked him, "Will neuralgia in the parent likely manifest itself in the offspring in the form of a tendency to insanity, and does not every experienced physician know that a case of violent neuralgia, which occurs from time to time in an obscure way, without any discoverable morbid cause, that he may predicate the existence of insanity in the family with almost as great confidence as if the patient were actually insane?" The court sustained objection by the State to the question. The witness was further asked by the defense, "Is it not a fact that violent neuralgia in the parent often manifests itself in the offspring in the shape of insanity?" Objection of the State to this question was also sustained. The further testimony of this witness is sufficiently shown by the opinion.

Bob Franklin, a witness for the State, testified that he knew the defendant. Being asked "Whether or not during the time you knew him he appeared to be of sound mind," he answered that he did. The defendant objected to the question and answer, stating no grounds.

N. J. Moore, for the State, testified that defendant went to school to witness for eight or nine years. He was asked by the State, "How often did you see him during that time?" The defendant objected, stating no grounds. The objection was overruled. Witness E. Knight, for the State, was asked by the solicitor, "Did you have frequent occasion to see the defendant, observe his conduct and language?" The defense objected generally to the question, which objection was overruled. Carrie Jones, for the State, was asked by the solicitor if she observed anything in the conduct, appearance or demeanor of the defendant which was peculiar or un-

[Braham v. The State.]

usual, to which general objection was made by defendant, and objection overruled.

Dr. McAdory, an expert witness, introduced by the State, was asked by the solicitor; "If a young man should be deeply in love with a young woman, who declined to marry him, and he should take her out walking and attract her attention to a train, and while she was looking at the train, shoot her, and when arrested say that he killed her, that he loved her and ought to be punished, that he told a number of persons that he killed her because he loved her, and knew he ought to be hung, that he sent and talked with a newspaper reporter telling him about the same thing, that he appeared cool and collected, that a short while after he sent for another person he had already talked to, and told him he had changed his mind about being punished, and that he was going to put up a defense, would you say that person was sane or insane?" To this question the defense objected on the grounds set out in the opinion. The objection being overruled, the witness answered; "Either a sane or an insane man might do that." Further testimony and objections thereto on examination of this witness, are sufficiently shown by the opinion.

The testimony being closed the court, in its general charge, directed the jury, among other things, as follows; "Insanity is a mental disease, it does not mean eccentricity or peculiar action of the brain, it means a departure caused by a disease of the brain. Mere temporary mania does not constitute insanity." Also, the court charged the jury as follows; "The jury should be careful that it (meaning insanity) is not used as a means to evade the law, as well as to see to it that a person irresponsible should not be punished."

The defendant asked the following written charges, and, on each being refused, duly excepted to the action of the court. (1). "If from all the evidence the jury have a reasonable doubt as to the sanity or insanity of the defendant at the time of the killing, then they should find the defendant not guilty by reason of insanity." (2). "Gentlemen of the jury, I charge you that in considering the statement made to Sandy Pettus, a witness

[Braham v. The State.]

for the State, by the defendant, you should consider as throwing light on the weight to be accorded to these statements of the defendant, the testimony of the witnesses that he was a person of unsound mind." (3). "Gentlemen of the jury, I charge you that in considering the testimony of the witness Sandy Pettus as to the statements of the defendant while in jail, as to his being engaged to the deceased and her breaking it off, and his other conversation there at that time, that you should consider in connection therewith the testimony of witnesses that he was of unsound mind." (4). "To warrant a conviction in this case, I charge you, gentlemen of the jury, that it is incumbent on the State to establish, by evidence to the satisfaction of the jury beyond a reasonable doubt, the existence of every element necessary to constitute the crime charged; and if the jury, after considering all the evidence bearing on the question of the insanity, entertain a reasonable doubt of the defendant's sanity at the time of the alleged offense, they should give him the benefit of that doubt, and find him not guilty by reason of insanity." (5). "Gentlemen of the jury, I charge you that, in considering the statement of the defendant to Sandy Pettus, while he was in jail, in substance that he was engaged to deceased, and that she broke off the engagement at the request of her parents, and that he asked her if she would marry any one else, and she replied that she could not promise, and all the statements then made by the defendant should be weighed in the light of the testimony of the witnesses that he was of unsound mind."

The verdict was that the defendant was guilty of murder in the first degree, and should suffer death. Judgment and sentence accordingly. Therefrom, defendant appeals.

J. W. ALTMAN and STALLINGS & NESMITH, for appellant.—The court cannot presume that no member of the jury was a negro, and, therefore, should have quashed the panel. Before a statement of a defendant can be put in evidence as a confession, especially when he is incarcerated, positive proof should be made that the state-

[Braham v. The State.]

ment was voluntarily made, without inducement or improper influence.—*Parrish's case,* 139 Ala. 17. There is no difference in principle in allowing a witness to testify that a person talked disconnectedly and appeared absent-minded, and being allowed to testify that he talked rationally, and seemed all right.—*Parrish's case, supra;* 82 Ala. 25; 113 Ala. 43. A person after several hours conversation with the defendant, though a non-expert, can testify to the manner, conduct and character of conversation of the defendant, and give an opinion as to the sanity of the defendant.—*Parrish's case,* 139 Ala. 43; *Caddell's case,* 129 Ala. 65; *Dominick v. Randolph,* 124 Ala. 557; *Parsons v. State,* 81 Ala. 577. On a question of insanity of the defendant, it is proper to show a brother to have been insane. Before a witness who is not an expert can testify to his opinion that a person is sane, he must first show the existence of facts upon which the opinion is based.—*Parrish's case, supra.* The definition of insanity given by the court was erroneous. *Parson's case,* 81 Ala. 577. The cautionary charge given the jury by the court tended to create upon the minds of the jury the impression that the defense of insanity was pleaded as a mere subterfuge, for the purpose of evading justice.

H. P. HEFLIN and B. M. ALLEN, *contra.*—Where the defendant neither makes inquiry, or requests the court to make inquiry, as to the qualification of petit jurors, he cannot wait until the jury is completed and then object to the panel on the ground that the court did not first ascertain the qualification of the jurors.—*James v. State,* 53 Ala. 380. The right of challenge is lost after a juror is sworn.—*Henry v. State,* 77 Ala. 75; *Linan v. State,* 68 Ala. 89; *Sparks v. State,* 59 Ala. 82; *Rush v. State,* 61 Ala. 89; *Smith v. State,* 55 Ala. 1; *Horea v. State,* 2 Ala. 275. A witness may testify to the appearance and apparent emotions of other persons.—*Amos v. State,* 96 Ala. 124; *Reeves v. State,* 96 Ala. 33; *Thornton v. State,* 113 Ala. 43; *Parrish v. State,* 139 Ala. 45; *Burton v. State,* 107 Ala. 108; *Jenkins v. State,* 82 Ala. 25; *Gardner v. State,* 96 Ala. 12. A witness cannot be

asked whether or not another witness who has testified was mistaken.—*Johnson v. State,* 94 Ala. 35. The question as to the competency of a witness, whether expert or non-expert, to give an opinion as to the sanity or insanity of a defendant, is a question for the court, and not for the jury, and the decision of the lower court on that question will not be reversed unless it clearly appears to have been erroneous.—*Parrish v. State,* 139 Ala. 17; *Burton v. State,* 107 Ala. 108; *People v. McCarthy,* 115 Cal. 255; *Redd v. State,* 69 Ala. 255. The appellate court will presume that the lower court did its duty in ascertaining that a confession was voluntary before admitting it, unless the contrary appears.—*Price v. State,* 117 Ala. 113; *Washington v. State,* 106 Ala. 44. The fact that a defendant is under arrest, when he makes a confession, will not make it involuntary.—*Stevens v. State,* 138 Ala. 81; *Fuller v. State,* 117 Ala. 36; *Hornsby v. State,* 94 Ala. 64; *Dodson v. State,* 86 Ala. 69; *Aaron v. State,* 37 Ala. 106; *Spicer v. State,* 69 Ala. 169; *McElroy v. State,* 75 Ala. 9. A non-expert witness may testify to his opinion of the sanity or insanity of a person, but, to authorize a non-expert to testify to his opinion, it must be shown that the witness had such acquaintance with the person whose sanity is in question, as to enable him to form a correct opinion. *Powell v. State,* 25 Ala. 21; *Norris v. State,* 16 Ala. 776; *Kroell v. State,* 139 Ala. 1; *Burney v. State,* 100 Ala. 157; *Parrish v. State,* 139 Ala. 42; *Caddell v. State,* 129 Ala. 65. When insanity is interposed as a defense, under our statutes the burden of proof is upon the defendant to prove it by a preponderance of evidence, and a reasonable doubt as to it does not justify an acquittal.—*State v. Martin,* 119 Ala. 1; *State v. Maxwell,* 89 Ala. 150; *Parsons v. State,* 81 Ala. 557; *Parrish v. State,* 139 Ala. 50; *Lide v. State,* 133 Ala. 43; Code of Ala., Sec. 4938.

DENSON, J.—On the *voir dire* of the jurors, none of them were examined by the court as to their relationship to the defendant or the deceased, but, after each juror was examined by the court, he was put upon the State and the defendant for acceptance, or rejection, and this mode of procedure continued until twelve jurors were ac-

[Braham v. The State.]

cepted, sworn and empaneled as the jury to try the case. At no time during the selection of the jury did the defendant make any objection to the court not inquiring of the jurors as to such relationship, nor did he request the court to make the inquiry. But, after the jury had been empaneled and sworn, then the defendant moved to quash the panel, and assigned as grounds therefor, that the court did not qualify the jurors as to relationship to the defendant and deceased.

The court then stated to the defendant that he might have the privilege of challenging any juror on the ground of relationship to the defendant or deceased, and offered to ask the jury as a whole, or each of them, as to such relationship; but the defendant objected to such question being propounded to the jury, or any member of the jury. The court then overruled defendant's motion and he excepted. With or without the evidence of the witness, Jake Jones, there was no error in the ruling of the court on the defendant's motion. Pretermitting the question as to the time when the motion was made, he not only would not avail himself of the opportunity offered him by the court to challenge any of the jurors on the ground named, but he offered no proof, and did not propose to offer any, to show that any juror was disqualified for the reason assigned in the motion to quash, and objected to the court at that time asking any one of the jurors as to such relationship.—*Jones' case,* 53 Ala. 380, and *Bridges' case,* 110 Ala. 15, and authorities there cited.

The defendant, to the indictment, pleaded not guilty, and not guilty by reason of insanity. He was found guilty of murder in the first degree and was sentenced to be hanged.

There was no conflict in the evidence which showed the killing, and from the record it appears that the only defense relied upon was that of insanity.

The question asked Mrs. LeCrane by the defendant, "Did you think they were white or colored people when they passed?" called for immaterial evidence, and the court properly sustained the State's objection to it.

The objection made to the evidence of the witness Bart George, as to defendant's statement about the kill-

ing, made while in the jail at Pratt City and about an
hour after the killing occurred, was not well taken. The
statement was shown, *prima facie,* to have been volunta-
rily made, and was competent both as a confession and as
evidence tending to show the condition of the defendant's
mind.—*Parrish's case,* 139 Ala. 16; *Hornsby's case,* 94
Ala. 55, and *Steven's case,* 138 Ala. 81.

It is the province of the jury to determine whether or
not a witness is mistaken in his evidence, where such
witness' evidence is shown to be in conflict with that of
another, and it is not permissible to ask a witness, if an-
other witness was not mistaken in the evidence given by
such witness.—*Johnson's case,* 94 Ala. 35.

When witnesses have been placed under the rule, it
rests in the discretion of the court to allow one, who did
not retire from the court room, to be examined. Espec-
ially is this true under the facts in this case, which show
that the witness objected to was exempted from the rule
by the court.—*McClellan's case,* 117 Ala. 140; *Sanders'
case,* 105 Ala. 4; *McGuff's case,* 88 Ala. 147; *McLean's
case,* 16 Ala. 672.

The witness Jake Jones, after testifying to a statement
which he said was made to him by the defendant in the
county jail sometime after the tragedy, was asked this
question, on cross-examination by the defendant, "Did he
tell you that he had been to Perry county where his
brother had gone insane and had gone into a church and
raised a big disturbance?" We recognize the rule, that
where a part of a conversation has been brought out by
the State, the defendant is upon cross-examination enti-
tled to have from the witness testimony of the whole con-
versation had at the same time, in reference to the same
subject-matter.—1 Greenleaf on Ev. § 201 and *McLean's
case,* 16 Ala. 672. But, upon an examination of the con-
versation as testified to by the witness, we have found
nothing which is even remotely connected with the evi-
dence which was sought to be elicited by the question
asked. It is insisted, however, that the testimony con-
templated would have had bearing upon the plea of in-
sanity, and was competent and relevant under the plea
which presented that issue. It may be conceded, that it

is competent under the plea of insanity to show, in connection with evidence tending to show insanity on the part of the defendant, that the defendant's brother was insane, but we do not think that this proof may be made by a mere declaration of the fact on the part of the defendant.

There is no merit in the 12th and 13th assignments of error relating to questions allowed by the court to be asked by the State of witness, Douglass Crenshaw, and they are not insisted upon by the defendant.

E. R. Norman, a witness for the defendant, testified that he was a reporter for the Age-Herald, and went to the county jail to interview the defendant the night of the day on which the killing occurred. That he went to his cell and talked to him for three-quarters of an hour, and that it was about 9 o'clock at night. That he could not get much sense out of him, he seemed to be cool but nervous; that his actions were very peculiar and that what he got from the defendant, in the interview, he had to pull out of him. The defendant then asked the witness this question, "State whether or not the defendant talked disconnectedly, appeared absent minded, or any other peculiarities about him which you may have noticed?" The court sustained an objection to the question. We think that it would have been competent for the witness Norman to have testified whether or not the defendant talked disconnectedly and whether or not his conversation was coherent, or incoherent. This did not call for an opinion of the witness, but would, if he had answered the question that his conversation was disconnected, have been a short-hand rendering of facts. But, the last clause of the question, we think, rendered the question as a whole objectionable. . This clause rendered the "Question very general, so much so, that irrelevant evidence would have been responsive to it."—*Ross' case,* 139 Ala. 144. There may have been peculiarities about the defendant, in his physical make up, noticed by the witness, which would have had no tendency whatever to enlighten the minds of the jury as to his mental status.

. Witness Norman, further testifying, said that he noticed that the defendant would repeat things he had al-

ready said, and that several times he asked him to leave him, that he wanted to read some letters. The witness was then asked this question, to-wit: "From these acts, conversation, peculiarities and demeanor, would you say that he was a person of sound or unsound mind?"

By numerous decisions of this court it has been held, that a non-expert witness, before he may be allowed to give his opinion of the existence of an unsound condition of mind, must be shown to have had the opportunity to form a judgment, and this would depend upon the familiarity of the witness with the person whose sanity is in question, "The character of the disqualification, the nature and number of the extraordinary circumstances detailed, and their proximity to the act involved in point of time." The witness was not shown to have had any previous acquaintance with the defendant; he had never seen him before the night of his interview with him. We think he was not brought within the rule allowing the opinions of non-experts as to the insanity of a person.—*Florey's Executors v. Florey,* 24 Ala. 241; *Norris' case,* 16 Ala. 776; *Powell's case,* 25 Ala. 21; *Houston v. Stubbs,* 33 Ala. 555; *Burney v. Torrey,* 100 Ala. 157; *Parrish's case, supra; O'Connor v. Madison,* 98 Mich. 183.

Furthermore, as was held in *Parrish's case, supra,* the question, as to the competency of a witness to express an opinion as to the insane condition of the defendant's mind, is a question for the court, and not for the jury; and the court's decision as to the question will not be revised, unless it is clearly made to appear to have been erroneous. It follows that there was no error in the court's ruling upon the objection made by the State. The same may be said with reference to the ruling of the court on the objection of the State to the question propounded by the defendant to the witness Cowan. This disposes of the 15th and 16th assignments of error.

The question asked by the defendant of witness, Ophelia Holdness, and to which the court sustained an objection, is so patently illegal as to require no consideration.

The two questions asked Dr. Hagler, with reference to neuralgia in the parent manifesting itself in the offspring, asumed that the parent was, or had been, afflicted with

neuralgia, and at the time the questions were asked no proof of the fact had been offered. Further, as to the first question, it also involves an inquiry as to knowledge on the part of others. It has been held by this court that the cognition of another is not a fact of which a witness may testify.—*Bailey's case,* 107 Ala. 151.

Dr. Hagler as an expert, having testified in answer to a hypothetical question, that, under the hypothesis stated, he would say the person was of unsound mind, it was proper on cross-examination for the State to test the accuracy of his information as to the cause of insanity. The jury is not concluded by the opinions given by experts on the question of sanity *vel non,* and while the court pronounces upon the competency of witnesses as experts, it is the province of the jury to measure the weight of their opinions; in order that the jury may have a proper appreciation of the value of such opinions, it is entirely competent to develop on cross-examination the extent and accuracy of the expert's knowledge of the particular subject upon which he has been called to testify, as an expert. The court committed no error in allowing the question—*McAlister's case,* 17 Ala. 434; *Parrish's case, supra; Washington v. Cole,* 6 Ala. 212; *Tullis v. Kidd,* 12 Ala. 648; *DePhue's case,* 44 Ala. 32; *Birmingham Railway & Electric Co. v. Ellard,* 135 Ala. 433.

Several hypothetical questions were propounded to Dr. Hagler on cross-examination by the solicitor. To each of the questions the defendant interposed a general objection.

In the case of *Sanders v. Knox,* reported in 57 Ala. 81, the court, through BRICKELL, C. J., said, "A general objection to evidence cannot be sustained, unless the evidence is manifestly illegal and irrelevant and apparently incapable of being rendered admissible in connection with other evidence. Such objections may mislead the party against whom they are taken and the court, and lead to the practice of making objections in this court, which, if made in the primary court, would have been obviated." "Undefined objections should never be made to the admission of evidence; and it may be laid down generally, that, if the party making them will not particu-

larize, the court is not bound to cast about for the grounds upon which in the mind of counsel they are rested, but may properly disregard them."—*Wallis v. Rhea,* 10 Ala. 453; *K. C. M. & B. R. Co. v. Smith,* 90 Ala. 25; *Ladd's case,* 92 Ala. 58; see also, the opinion of the court on page 318 of the 39 L. R. A. in the case of *Burt v. State* (Texas).

The above ruling disposes of the 21st, 22d, 23d, 24th and 26th assignments of error.

The court allowed the solicitor, against a general objection made by defendant, to ask Dr. Hagler if insanity could be simulated; the witness answered, "I don't know." There is no merit in the 27th assignment of error relating to this matter; if it should be conceded that the objection was good, the answer to the question was harmless.

We have carefully examined the questions presented by the 28th, 29th, 30th, 31st, 32nd, 33rd, 34th, 35th, 36th, 37th and 38th assignments of error, which relate to the court's rulings on the admissibility of evidence, in the examination of witnesses, Bob Franklin, N. J. Moore, E. Knight and Carrie Jones, and conclude that the court's rulings with reference to these questions are correct, even if objections had been particularized. The objections, however, were all general.

We cannot say that the court erred in allowing James Kent, a witness for the State, who testified that he had known the defendant from his childhood and had talked with him five times since July, 1903, and that the last conversation he had with him was on January 4th or 5th, 1904, to testify to the sanity of the defendant. The rule with reference to the competency of witnesses called to testify to the sanity of a person is not so exacting as it is with reference to those called to show insanity.—*Ford's case,* 71 Ala. 385; *Parson's case,* 81 Ala. 577; *Caddell's case,* 129 Ala. 65; *Parrish's case, supra.* In Parrish's case, the rules applicable to the competency of witnesses, expert and non-expert, upon the question of insanity, have been carefully and succinctly stated and the authorities collated.

The question asked witness Kent by the State, viz; "Did you observe anything unusual, peculiar or unnatural with him then?" was properly allowed.—*Gardner's case,* 96 Ala. 121; *Thornton's case,* 113 Ala. 43; *Parrish's case, supra.*

The b.ll of exceptions states that the defendant asked the witness Kent, on cross-examination, four or five times whether he could say that, during the month of December, 1903, and January, 1904, the defendant was insane at intervals; and that the witness answered each time that he could not say that, from his knowledge and acquaintance and talk with him, he was of a sound mind. The bill of exceptions then states that the court declined to permit the same question to be put to the witness again as an unnecessary consumption of time, and the defendant duly.excepted. We fail to see any merit in the exception. A party has no right to delay the court with unnecessary questions. The witness had sufficiently answered the question, and the defendant lost nothing by not being allowed to have the witness answer again. *Parrish's case,* 139 Ala. on page 41.

The evidence of the witness Sandy Pettus, objected to by the defendant, was not strictly in rebuttal, but it was w.thin the discretion of the court to allow evidence, which, competent otherwise, was not in rebuttal. And the court's exercise of this discretion is not reviewable here. No other specific ground of objection was made and the statements test.fied to were shown to have been voluntarily made.. Hence, the court's ruling with reference to the evidence was free from error.

The exceptions reserved to the court's rulings on the objections made by the defendant to the two questions propounded by the State to Dr. McAdory, to-wit; "Did you ever treat him at any other time?", "What were the character of your conversations?", and the exceptions reserved to the rulings with reference to the evidence of witness Holey, are so obviously devoid of merit as to require no discussion of them.

To the hypothetical question asked Dr. McAdory by the solicitor, the defendant interposed an objection and particularized four grounds for the objection, namely,

"Because the hypothetical question was not a true, or comparatively true, statement of all the evidence; 2d, Because a part of the question, where it stated supposed facts, the facts, as stated, were mere inferences; 3d, Because testimony brought out tending to show the defendant insane was not included in the question; and 4th, Because all the acts of the defendant, as shown by the evidence, were not included in the hypothetical question." If there was any error in allowing the question, it was error without injury, as the answer was not unfavorable to defendant.—*Parrish's case, supra; People v. Augsbury,* 97 N. Y. £01; *Burt v. State,* 39 L. R. A. p. 318.

Dr. McAdory testified on the direct examination, that he was a practicing physic'an and had been such since 1897. That he was assistant county physician and had seen the defendant a number of times in the county jail. That he treated the defendant for a severe cold which turned out to be measles, and that he treated him again a few days before the trial. He further testified, that he saw the defendant often in the jail and talked with him, he supposed, a dozen times; that his conversations were chiefly about his phys'cal condition. That from his acquaintance with, observation of the defendant, and from his profess'onal knowledge, he would say that the defendant was sane. On cross-examination the defendant asked Dr. McAdory this question; "Are you an·expert on insanity?" We have been unable to find any case in which the precise question presented has been considered. It is undoubtedly the law that the court must determine the quest'on of the competency of a witness to testify as an expert and that all evidence which goes to the competency of such witness should be addressed to the court. It is also true, that after a witness has been held competent by the court it is the province of the jury to determine the weight of the evidence of such witness, and as we have ruled in a previous part of this opinion, a jury is not concluded by the opinions of experts, but must weigh such opinions in connection with the other evidence, and, in order to afford the jury ample opportunity to test the value of such opinions, it is competent on cross-examination to inquire of the expert as to the extent and accu-

racy of his knowledge with reference to the particular subject upon which, as an expert, he has expressed an opinion. As was said in *DePhue's case*, 44 Ala. 39, "A physician is an expert, and as such he may be asked questions which develop his capacity to form a correct judgment upon the experiences of his profession." In this respect it might be competent to ask the physician if he had a diploma, or from what college he graduated, or the extent of his experience in the treatment of persons afflicted with insanity. In this way some of the data would be furnished upon which the court, in the first instance, would be able to draw its conclusions as to the competency of the witness, and the jury, in connection with the evidence upon which the opinion is based, could measure the weight to be accorded the opinion expressed. But we submit the question under consideration did not call for any data of the kind above referred to, nor data of any kind, but simply called for the opinion or conclusion of the witness as to his capability, and to have allowed an answer to it would have been to substitute the witness for the court and jury, whose duty it was to pass upon the competency of the witness and the weight of his evidence. It is insisted by counsel, that the question should have been allowed because it called for a fact peculiarly within the knowledge of the witness. Not every fact that lies peculiarly within the knowledge of a witness is competent evidence. We note the fact that the witness by his evidence made himself competent to express an opinion that the defendant was of sound mind, aside from the fact that he was an expert. We think there was no error in the court's ruling on the objection to the question.

Charges numbered 1 and 4, refused by the court, were properly refused under the following authorities. *Lide's case*, 133 Ala. 64; *Porter's case*, 135 Ala. 51; *Kroell's case*, 139 Ala. 1; *Parrish's case, supra;* Code, §4938.

Charges 2, 3 and 5 were properly refused; they each leave out of consideration the evidence which tended to show the sanity of defendant, thus singling out a part of the evidence. They also possessed the vice of being argumentative.—*Hussey's case,* 86 Ala. 34; *Fountain's case,*

98 Ala. 40; *Horn's case,* 102 Ala. 155; *Mitchell's case,* 65 Ala. 65.

Under the evidence in the case there was nothing to warrant the court in charging upon the law of manslaughter; the defendant was either guilty of murder, or he was not guilty by reason of insanity, and the court was under no duty to charge the law of manslaughter.

We find no error in that part of the oral charge of the court relating to the definition of insanity, and the exception thereto was without merit.—*Parrish's case, supra.*

The court said to the jury in the oral charge, "The jury should be careful that it (meaning insanity or the plea of insanity) is not used as a means to evade the law as well as to see to it that a person irresponsible should not be punished."

We are not informed by the bill of exceptions of the connection in which the above fragment of the oral charge was given. But however that may be, we do not think that the court breached the rules of judicial propriety in thus cautioning the jury. The cautionary remark did not present one side more prominently than the other, by it the jury was simply cautioned that they might not allow an error to creep into their finding one way or the other.

We have found no error in the record, and the judgment of the court below is affirmed.

Affirmed.

McClellan, C. J., Haralson and Dowdell, J. J., concurring.