# Milford *v.* The State.

### *Assault With Intent to Murder.*

(Decided Dec. 19, 1911. 57 South. 96.)

1. *Homicide; Insanity; Evidence.*—Before evidence tending to produce insanity, such as the acts and bad conduct of a wife, becomes admissible as a defense in murder or assault with intent, the defendant must offer some testimony of his insanity at the time of the commission of the act charged

2. *Trial; Objection to Evidence; Putting Court on Notice.*—Where evidence is offered which is prima facie irrelevant and inadmissible, the court will not be put in error for sustaining objection thereto, unless the party calling for such evidence states to the court that he intends by subsequent evidence to show its relevancy, and the tendencies and character of the subsequent evidence to be itroduced by him.

3. *Witnesses; Examination; Leading Questions.*—It is within the discretion of the trial court to permit, or not, leading questions and unless abuse of discretion is shown, a court will not be put in error for permitting or declining to permit leading questions.

APPEAL from Jefferson Criminal Court.

Heard before Hon. S. L. WEAVER.

Will Milford was convicted of assault with intent to murder and sentenced to twenty years in the penitentiary. The defense was not guilty by reason of insanity. From the conviction he appeals. Affirmed.

[Milford v. The State.]

J. T. ROACH, for appellant. The general character of the wife (in this case the person assaulted) and her acts, tending to produce strange mental condition, were admissible, and the court erred in excluding the evidence offered in this connection.—*White v. The State,* 22 So. 111; *McCutchens v. Loggens,* 109 Ala. 457; *Rhea v. The State.* 100 Ala. 119. For authority in other jurisdictions, see 55 Mo. 520; 43 S. W. 637; 188 Ind. 9; 32 S. W. 166. The evidence offered as to the insanity of the defendant is competent, and should have been admitted.—*Parsons v. The State,* 81 Ala. 577; *Parrish v. The State,* 139 Ala. 16.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The defense of moral law emotional insanity is not recognized in this state as a defense to crime.—*Cauley v. The State,* 133 Ala. 128; *Walker v. The State,* 91 Ala. 768; *Parsons v. The State,* 81 Ala. 577. A mere declaration that a man acted like a crazy man under the circumstances of this case was not sufficient.—*Braham v. The State,* 143 Ala. 28. Testimony as to the assaulted woman's character was not admissible to impeach her veracity.—*Crawford v. The State,* 112 Ala. 1; *Perry v. The State,* 149 Ala. 40; *Swent v. The State,* 154 Ala. 46. The acts and conduct of the wife were prima facie inadmissible at the time offered, and no statement was made to the court of anticipated evidence rendering the proposed testimony relevant.

DE GRAFFENRIED, J.—The defendant was indicted for assault with intent to murder, was convicted by a jury, and under the judgment of the court rendered on the verdict was sentenced to the penitentiary for

twenty years. From this judgment the defendant appeals.

The party upon whom the assault was made was the wife of the defendant. The details of the crime, as shown by the evidence, were brutal in the extreme, and if the defendant was guilty the punishment inflicted by the court was not too severe.

It appears from the evidence that the relations existing between the defendant and his wife at the time of the commission of the alleged offense were extremely unhappy, and that this unhappy situation was due, largely, to the misconduct of the wife. In fact, the parties had separated more than once, and the wife, according to the testimony, was a woman of bad character. On the other hand, except for certain statements made by the wife while she was on the stand as a witness testifying against the defendant, the evidence all tends to show that the defendant was, up to the time of the commission of the offense, a man of good character.

On the night of the alleged offense, the defendant and the wife slept in different rooms, and about three o'clock in the morning the defendant went into her room and while she slept struck her several blows on the head, fracturing the skull in three places and inflicting several dangerous wounds. The bill of exceptions tends to show that the wife did not know of her injuries until several days after the occurrence, as the first blow seems to have rendered her unconscious. Immediately after the occurrence the defendant left and was not seen for more than two weeks.

The case was tried upon the pleas of not guilty and not guilty by reason of insanity at the time of the commission of the offense.

1. While the trial was in progress and before the defendant testified, and before any evidence had been

[Milford v. The State.]

offered tending to show that the defendant was insane at the time of the commission of the alleged offense, and while the defendant's wife was testifying as a witness, counsel for defendant asked her the following question: "Is it not a fact that some time last summer, before the alleged assault, you were in company with men of questionable habits and character on the corner of Twentieth street and First avenue in the city of Birmingham, and that you held their hands and slapped them on the back?" The state objected to the above question on the ground that it called for incompetent, irrelevant, and immaterial testimony. Thereupon the attorney for the defendant called the court's attention to the fact that the defendant had interposed a plea of "not guilty by reason of insanity," and that he proposed to show that the conduct on the part of the wife was brought home to the defendant, and argued to the court that under the plea of insanity it was relevant, material, and competent to show any act or fact which, when brought to the knowledge of the defendant, would have a tendency to unbalance his mind. The court sustained the objection and refused to allow the witness to answer the question, and the defendant then and there duly excepted to this action of the court.

In making the above statement to the court, counsel for defendant did not state that he intended, by subsequent evidence to be introduced by him, to show that the information called for by the above question, when communicated to defendant, had so weighed upon his mind that he became insane, and that at a time of mental irresponsibility, caused by such insanity, he committed the act.

A jury have no right to infer the existence of insanity from the existence of a cause which may have some tendency to produce it, unless there is some evidence

before them that insanity actually followed as a result of the possible cause. As was said by the Supreme Court of Indiana, "If it were a case where a given effect *must* follow the cause, there would be force in the argument because proof of the cause would be proof of the effect. But we know that the various causes that may tend to produce insanity very frequently fail to produce any such effect; and it seems to us that it is not competent to prove the existence of such exciting cause unaccompanied with some proof that the effect followed the cause. Indeed, a jury would not be authorized to find a man to be insane without proof on the subject other than the fact that a cause existed that tended to prove insanity."—*Sawyer v. State,* 35 Ind. 80.

Our undertsanding is that when evidence is offered during a trial and when, at the time it is offered, it is *prima facie* incompetent and the party against whom it is sought to be introduced objects to its introduction, the party so offering the evidence cannot put the trial court in error for its refusal to allow such evidence, unless he, by a statement to the court, shows that he will subsequently introduce such evidence as will render the proposed evidence relevant and material and subsequently introduces such evidence. The defendant, while the state was offering its evidence, asked similar questions of other witnesses, which, if answered affirmatively, would have tended to show that defendant's wife was a lewd woman and that her acts had been such as would naturally have given him much concern, but as that evidence was, at the time it was offered, *prima facie* irrelevant, and counsel for the defendant did not sufficiently inform the court as to *how* and by what evidence he would subsequently render it material, the court cannot be put in error for refusing,

on the objection of the solicitor, to allow the evidence
to go to the jury.--*Smith v. Gufford,* 33 Ala. 168; *First
Nat. Bank v. Chaffin,* 118 Ala. 246.

Evidence that a man's wife was a lewd woman and
that he was informed of her misconduct in no way pal-
liates his crime if he murders her. If her lewdness ren-
ders him insane and he kills her while insane, he
must offer evidence of his insanity at the time of the
act before the evidence of her lewdness becomes admis-
sible.—*Sawyer v. State, supra.*

2. For the above reasons, the action of the trial court
as to all of the questions propounded to the witnesses
Vandy Lewis, J. F. Weir, and Mrs. Charley Graham,
which the court, on the objection of the solicitor, re-
fused to allow the witnesses to answer, must be sus-
tained. These witnesses were placed upon the stand by
the defendant and many of the questions were plainly
leading, and the action of the trial court in refusing to
allow them to be answered can be also sustained on
that ground.

3. It is also evident that the court, on objection of
the solicitor, properly refused to allow Mrs. Charley
Graham to answer the following question: "Is it not
a fact that you observed the defendant, a short while
before this trouble, strolling about the field picking up
sticks, and that you remarked to your husband that
Mr. Milford acted like a crazy man?"—*Braham v. State,*
143 Ala. 28.

4. The action of the trial court in its other ruling
on the evidence was in accordance with the views ex-
pressed by us in sections 1 and 2 of this opinion, and
such rulings of the court were, therefore, without er-
ror.

While there may have been some evidence tending to
show that the defendant was insane at the time of the

commission of the alleged offense, the record discloses that he was convicted by a jury after a fair and legal trial, and as there is no error in the record the judgment of the court below is affirmed.

Affirmed.